THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERT ALONSO, and EMILIA ALONSO, Respondents. [936 NYS2d 250]—

In this criminal prosecution for charges related to Medicaid fraud, this matter has been remitted to us from the Court of Appeals for consideration of the merits of the People's appeal from an order granting the defendants' oral application to dismiss the indictments on the ground that the People failed to comply with their obligation to disclose exculpatory evidence pursuant to *Brady v Maryland* (373 US 83 [1963]; *see People v Alonso*, 16 NY3d 581 [2011]).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" (*Brady v Mary-*

*land*, 373 US at 87). "[T]he duty of disclosing exculpatory material extends to disclosure of evidence impeaching the credibility of a prosecution witness whose testimony may be determinative of guilt or innocence" (*People v Frantz*, 57 AD3d 692, 693 [2008]; *see Giglio v United States*, 405 US 150, 154-155 [1972]). To establish a *Brady* violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued" (*Strickler v Greene*, 527 US 263, 281-282 [1999]; *see People v LaValle*, 3 NY3d 88, 109-110 [2004]).

Here, the alleged exculpatory materials at issue are the pretrial statements and grand jury testimony of the witness Dr. Emille Agrait, who was a dentist practicing in the office of the defendant Dr. Robert Alonso at times relevant hereto. Dr. Agrait gave statements to two investigators, and testified before two grand juries for the respective indictments. In her statements and testimony, she identified 14 of her patient charts, stated that they contained notations which were not in her own handwriting, and gave her opinion as to which of the two defendants had made those notations. The statements and testimony contain inconsistencies with respect to Dr. Agrait's opinion as to the handwriting on 4 of the 14 charts. It is undisputed that the People provided the defense with Dr. Agrait's statements to investigators prior to the defendants' filing of their pretrial omnibus motion in July 2007. It is further undisputed that the People provided the defense with Dr. Agrait's grand jury testimony in May 2008, approximately one month prior to the commencement of trial in June 2008, and approximately four months prior to Dr. Agrait's trial testimony in September 2008. With respect to the disclosure in May 2008, the People provided the pretrial statements and testimony of all witnesses, including Dr. Agrait, in three-ring binders, organized by witness. The defendants used Dr. Agrait's two statements to investigators in preparing their pretrial omnibus motion, and they questioned Dr. Agrait and another witness about those statements during cross-examination at trial. Although the defendants could have questioned Dr. Agrait about her grand jury testimony during cross-examination at trial, they interrupted the cross-examination in order to make their oral application to dismiss when Dr. Agrait testified that she had changed her opinion about the handwriting on her patient charts and believed she had told the prosecutor about her change in opinion prior to trial. During subsequent colloquy, the prosecutor informed the court that Dr. Agrait did not make the alleged oral statement to him and he learned for the first time during the

cross-examination that she had changed her opinion. The court credited the prosecutor's representation, and ruled that the alleged oral statement was not part of the *Brady* material. However, the court held, in effect, that the time and manner in which Dr. Agrait's pretrial statements to investigators and grand jury testimony were disclosed to the defense violated the prosecutor's obligations under *Brady*.

On the record presented, the People fully complied with their duties under *Brady*. The People and the defense simultaneously learned of Dr. Agrait's change in opinion as to the handwriting on her charts during cross-examination at trial; the People cannot be faulted for failing to disclose information which was not in their possession (*see People v Tyson*, 238 AD2d 529, 529-530 [1997]). Further, the People disclosed the two statements to investigators and the grand jury testimony well in advance of trial, affording the defendants an opportunity to use those materials. "[A] defendant's constitutional right to a fair trial is not violated when, as here, he is given a meaningful opportunity to use the allegedly exculpatory material to cross-examine the People's witnesses or as evidence during his case" (*People v Cortijo*, 70 NY2d 868, 870 [1987]; *see People v Belgrave*, 51 AD3d 939 [2008]).

The defendants contend, however, that they were not given a meaningful opportunity to use these materials because the People failed to identify the exculpatory portions within them. Contrary to this contention, the alleged impeaching statements and inconsistencies were not concealed from the defendants and were readily discernable. The defendants had the two statements prior to July 2007. Within the People's disclosure in May 2008, the materials pertaining to Dr. Agrait were easily found, not voluminous, and provided well in advance of her testimony, allowing the defendants ample opportunity to find any inconsistencies they wished to use on cross-examination. The prosecutor did not have a duty to prepare the defendants' case for them. "It is not the prosecution's duty . . . when preparing its case to affirmatively search for evidence to impeach its own witness' testimony" (*People v Brown*, 56 NY2d 242, 247 n [1982]).

Further, the defendants contend that the prosecutor attempted to conceal exculpatory evidence during the direct examination of Dr. Agrait when, knowing that her handwriting identifications were unreliable, he did not question her about the alleged forged notations on her patient charts but asked her instead to offer an opinion as to the handwriting on Medicaid claim forms and other documents prepared by the defendants in the course of their business. While "the prosecutor's duty

extends to correcting mistakes or falsehoods by a witness whose testimony on the subject is inaccurate" (*People v Steadman*, 82 NY2d 1, 7 [1993]; *see People v Jones*, 31 AD3d 666, 667 [2006]), no such violation is supported by the record here. The few inconsistencies in Dr. Agrait's pretrial statements and grand jury testimony do not support the defendants' contention that the prosecutor had reason to doubt the reliability of Dr. Agrait's handwriting identifications. Moreover, such inconsistencies were related to Dr. Agrait's attempts to identify the author of forged notations, which were written on her charts without her authority with the intent to conceal the identity of the author, and thus, such inconsistencies do not detract from her reliability in identifying handwriting on Medicaid forms which were prepared by the defendants in the course of their business.

Accordingly, the Supreme Court erred in determining that the People violated their duty to disclose exculpatory evidence and erred in dismissing the indictments. Contrary to the defendants' contention, retrial is not barred by principles of double jeopardy simply because the defendants obtained a dismissal "with prejudice." The Supreme Court's erroneous dismissal based upon an alleged *Brady* violation did not constitute an adjudication on the facts going to guilt or innocence (*see People v Schaum*, 98 NY2d 667, 668 [2002]; *People v Key*, 45 NY2d 111, 117 [1978]; CPL 40.30 [3]), nor did the prosecutor engage in any misconduct intended to provoke a mistrial (*cf. Matter of Davis v Brown*, 87 NY2d 626, 630-631 [1996]). Therefore, we remit this matter to the Supreme Court, Westchester County, for further proceedings on the indictments. Angiolillo, J.P., Belen, Lott and Austin, JJ., concur.