■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEE LONGTIN, Appellant. [666 NYS2d 357] —Mercure, J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered January 7, 1993, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal possession of a controlled substance in the first degree (two counts), criminal possession of marihuana in the second degree, criminally using drug paraphernalia in the second degree (three counts) and criminal sale of a controlled substance in the third degree (two counts).

On two occasions during August 1991, police informant Thomas Bangerter went to defendant's home in the Town of Dryden, Tompkins County, and made controlled buys of cocaine from defendant. On September 20, 1991, County Court signed an eavesdropping warrant authorizing a wiretap on defendant's telephone, and on September 26, 1991, the police intercepted a conversation between defendant and Richard Muniz wherein defendant arranged for the purchase of 250 grams of cocaine

from Muniz for $7,000. The next morning, the police observed Richard Lucas and Daryl Hallock depart from defendant's home in defendant's car and further police surveillance picked them up in New York City, where they were seen with Muniz on the afternoon of September 27, 1991. Upon returning from New York City later that day, Lucas and Hallock went to defendant's residence, arriving at about 10:00 P.M. Shortly thereafter, the police executed a no-knock search warrant at defendant's residence. In defendant's upstairs bedroom, the police found four packages of cocaine with an aggregate weight of 364.7 grams (12.9 ounces) and two electronic scales, assorted plastic bags and a bottle of Inositol, a cutting agent. Elsewhere on the premises they found approximately three pounds of marihuana.

Defendant, Muniz, Hallock and Lucas were jointly indicted for two counts of conspiracy in the second degree and defendant was also individually indicted on various counts of criminal possession of a controlled substance, criminal possession of marihuana, criminal sale of a controlled substance and criminally using drug paraphernalia. At the ensuing trial, Bangerter, Lucas, Muniz's girlfriend (Maria Zabala) and a number of law enforcement personnel testified for the People, providing considerable detail concerning the events of August and September 1991 and overwhelming evidence of defendant's participation in the criminal transactions alleged in the indictment. Convicted of conspiracy in the second degree, criminal possession of a controlled substance in the first degree (two counts), criminal possession of marihuana in the second degree, criminally using drug paraphernalia in the second degree (three counts) and criminal sale of a controlled substance in the third degree (two counts), and sentenced to prison terms aggregating 17 years to life, defendant appeals.

Substantially all of the contentions advanced on appeal are founded on a single defense theory, i.e., that the entire prosecution (and, in fact, defense) of the charges against defendant was infected by corruption. The underlying scenario, as developed through liberal application of hyperbole, innuendo and some dissimulation, features a rogue cop who manufactures damning false evidence against defendant, a corrupt prosecutor who is aware of this "ugly, little secret" but keeps silent until it is uncovered by the news media on the eve of trial (at a time when it is too late for the necessary "complete reevaluation of [defendant's] trial strategy"), and traitorous defense counsel, who is actually working for the other side. If true, defendant's account of the underlying events would compel

reversal of the judgment of conviction. However, a reading of the record on appeal discloses defendant's work to be largely fiction.

It is undisputed that former State Police Investigator Robert Lishansky was involved in the investigation of this case and that he falsified Hallock's fingerprint on a plastic bag containing marihuana that was seized from defendant's residence (*see, People v Muniz*, 215 AD2d 881, 882-883). There is also reason to believe that Lishansky may have similarly falsified defendant's fingerprint on drug packaging that was seized from defendant's residence, a fact not known by the prosecution prior to the time of trial. The Lishansky issue first arose during jury selection, on November 5, 1992, when the media reported that he had been suspended from the State Police. At that time, the District Attorney stated that he had not become aware of the seriousness of the accusations against Lishansky until the prior day, or perhaps the day before, and even then had no knowledge that Lishansky had falsified any evidence against defendant.

Nonetheless, so as to err, if at all, on the side of caution, the District Attorney stated that he would not be calling Lishansky as a witness and, in fact, was completely removing fingerprint evidence from the case. So as to alleviate defendant's concerns regarding the full extent of Lishansky's involvement in the case, the District Attorney further represented on the record that Lishansky had been assigned to the State Police Investigation Unit, not the Narcotics Unit, that he was not present during the monitoring of the telephone conversations that were to provide the wiretap evidence in the case, that he was not present when the search warrant was executed at defendant's home, and that, in fact, "his sole involvement in this case was to stay at Sidney, New York and receive packaging materials for fingerprint analysis at which time the packaging materials had already been separated from the drugs which stayed at the crime lab". Finding that there had been no *Brady* violation, County Court denied defendant's motion for a mistrial and the matter proceeded to trial.

Based upon the foregoing, we agree with the People that County Court did not abuse its discretion in denying defendant's motion for a mistrial (*see, People v Miller*, 239 AD2d 787, 790, *lv granted* 90 NY2d 907; *People v Garrette*, 223 AD2d 749, 752, *lv denied* 87 NY2d 1019). First, in view of the fact that the People were not aware of the seriousness of the accusations against Lishansky until the eve of trial, we perceive no *Brady* violation. We note in that regard that "[a] police of-

ficer's secret knowledge of his own prior illegal conduct in unrelated cases will not be imputed to the prosecution for *Brady* purposes where the People had no [prior] knowledge of the corrupt officer's 'bad acts'" (*People v Johnson*, 226 AD2d 828, 829, *lv denied* 88 NY2d 987; *see, People v Vasquez*, 214 AD2d 93, 100-101, *lv denied* 88 NY2d 943). Second, even if there was a technical *Brady* violation, by agreeing to eliminate all fingerprint identification evidence from the case, the District Attorney in effect imposed upon himself the most appropriate sanction for the violation (*see, People v Lussier*, 205 AD2d 910, 911, *lv denied* 83 NY2d 1005, *cert denied* 513 US 1078). Third, in the absence of any indication as to how prior knowledge of Lishansky's corruption could have assisted defendant in better preparing for trial, we perceive no prejudice. Finally, based upon the overwhelming direct evidence of defendant's guilt (*see, People v Maldonado*, 205 AD2d 933, *lv denied* 84 NY2d 908) and Lishansky's very limited involvement in the investigation, there is no reasonable possibility that, had the evidence been disclosed to the defense, the result of the prosecution would have been different (*see, People v Vilardi*, 76 NY2d 67, 77). Although there can be no question that defendant would have welcomed the opportunity to fully exploit the fact of Lishansky's corruption, the fact remains that, once fingerprint evidence was removed from the case, evidence concerning Lishansky's misdeeds would have been largely irrelevant.

We are also unpersuaded by defendant's claims of conflict of interest and denial of effective assistance of counsel. Initially, in view of the removal of fingerprint evidence from the case, the fact that defense counsel was simultaneously representing State Police Investigator David Harding, a Trooper assigned to the same unit as Lishansky who was also charged with falsifying fingerprint evidence, did not constitute a conflict of interest (*see, People v Sides*, 242 AD2d 750, 751). We further conclude that, viewed in the totality of the circumstances at the time of the representation, defendant's attorney provided meaningful representation (*see, People v Murphy*, 235 AD2d 933, *lv denied* 90 NY2d 896). In our view, defense counsel's inability to substantially exploit the fact of Lishansky's corruption was based not on flawed tactics but on the simple fact that, because of Lishansky's minimal connection to the case, there was very little to exploit. Similarly, the fact that defendant was convicted of a number of counts and sentenced to a severe penalty is attributable to the crimes he committed and the wealth of evidence supporting a conviction.

Defendant's remaining contentions have been considered and found to be also unavailing.

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.