[826 NE2d 797, 793 NYS2d 826]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KATH-
ERINE M. SEEBER, Appellant.

Argued January 13, 2005; decided February 17, 2005

**APPEARANCES OF COUNSEL**

*Eugene P. Grimmick*, Troy, for appellant.

*James A. Murphy, III, District Attorney*, Ballston Spa (*Nicho-
las E. Tishler* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be affirmed.

County Court did not abuse its discretion by denying
defendant's motion to withdraw her negotiated guilty plea to
second-degree felony murder. Nothing in the record of the plea
allocution called into question the voluntary, knowing and intel-
ligent nature of defendant's bargained-for plea (*see People v Al-
exander*, 97 NY2d 482, 485 [2002] ["Trial judges are vested
with discretion in deciding plea withdrawal motions because
they are best able to determine whether a plea is entered volun-
tarily, knowingly and intelligently"]). Defendant entered her
plea after detailed cautionary warnings from County Court and

extensive consultation with her counsel. In defendant's motion to withdraw her plea, made only after a jury acquitted her codefendant against whom she had agreed to testify, she neither asserted innocence nor intimated that she received less than effective assistance from counsel (*compare id.*).

Focusing solely on an isolated portion of her allocution, defendant now claims that an element of the pleaded-to offense—that she had committed the burglary underlying the felony murder charge by "remain[ing] unlawfully"—was not established. In response to a question from the prosecutor, however, defendant expressly acknowledged having remained unlawfully.[1]

In any event, we have never held that a plea is effective only if a defendant acknowledges committing every element of the pleaded-to offense (*see People v Lopez*, 71 NY2d 662, 666 n 2 [1988]), or provides a factual exposition for each element of the pleaded-to offense (*compare People v Nixon*, 21 NY2d 338, 350 [1967], *cert denied sub nom. Robinson v New York*, 393 US 1067 [1969]; *see also People v Moore*, 71 NY2d 1002, 1005 [1988]). Indeed, "we have said repeatedly that there is no requirement for a uniform mandatory catechism of pleading defendants" (*People v Fiumefreddo*, 82 NY2d 536, 543 [1993] [internal citations and quotation marks omitted]). Because nothing that defendant said or failed to say in her allocution negated any element of the offense to which she pleaded (*see People v Lopez*, 71 NY2d at 666 n 2) or otherwise called into question her admitted guilt[2] or the voluntariness of her plea, she provided County Court with no basis for allowing the plea's withdrawal (*compare*

---

1. The dissent protests that defendant, a lay person, would not have understood what it meant to "remain unlawfully" in the sense of the burglary statute. This is supposition, an assertion without support in the record. Moreover, defense counsel, who presumably knew the technical legal meaning of "remain unlawfully," advised and consulted with defendant throughout the plea proceeding. Indeed, after the prosecutor proposed asking defendant follow-up questions regarding the burglary underlying the indictment's felony murder count, counsel requested time for an off-the-record discussion with defendant to fashion a question that "might satisfy" the prosecutor. When questioning resumed, the prosecutor posed only two questions, one of which dealt with remaining unlawfully. Defendant did not ask for the question to be repeated, as she had with a prior question. Nor did defendant request time to confer with counsel, which the trial court, in fact, offered her. After, as her counsel put it, "thinking" about the answer for a while, defendant instead unequivocally acknowledged that she had remained unlawfully.

2. Contrary to the dissent's suggestion, the plea was far from baseless. Indeed, defendant entered it after County Court denied her motion to suppress confessions that she had made to the police. In her confessions, defendant acknowledged knowing that codefendant intended to steal from her

*People v Ramos*, 63 NY2d 640, 642-643 [1984] [when considering motion to withdraw a guilty plea, "the Judge to whom the motion to vacate is addressed should be entitled to rely on the record before him in order to insure that guilty pleas are accorded finality whenever possible"]).

R.S. Smith, J. (dissenting). Except in the rare case of an *Alford* plea (*North Carolina v Alford*, 400 US 25 [1970]), a guilty plea should not be accepted unless the defendant admits that he or she is actually guilty of the offense charged. To decide whether defendant has made such an admission, an allocution should be read with the aid of common sense, and without dwelling unduly on technicalities (*People v Lopez*, 71 NY2d 662, 666 n 2 [1988]; *People v Nixon*, 21 NY2d 338 [1967]). Often, as in *Nixon* and several of the cases decided with it, this rule will lead courts to uphold guilty pleas, even where the allocution is tainted by a minor omission, or a trace of equivocation.

This case, in my view, presents the reverse situation: I think it is quite clear, from a commonsense reading of this plea allocution, that defendant did not admit to committing felony murder. Indeed, the record indicates that she did not commit that crime, though she may well have committed intentional murder (to which she did not plead guilty). Here a hyper-technical reading of the plea allocution is being used not to invalidate the plea but to rescue it from invalidity.

The crime to which defendant's plea related was a violation of Penal Law § 125.25 (3), the felony murder statute, which applies where defendant has caused the death of another person in the course of one of the felonies listed in the statute; robbery and burglary are on the list, but larceny is not. The relevant count of the indictment charged that defendant and her codefendant "committed or attempted to commit robbery or burglary, and, in the course of and in furtherance of such crime(s) or of immediate flight therefrom, they, caused the death of Ruth M. Witter."

The flaw in the allocution is that defendant failed to admit to either a robbery or a burglary. In defendant's only description

___

grandmother (a fact that she reiterated during the allocution), and also that codefendant had indeed taken money and jewelry from her grandmother's home. Given the confessions, it is certainly understandable that the People charged defendant with several crimes, including felony murder occurring during either a burglary or a robbery. Additionally, the confessions, especially in conjunction with defendant's allocution, provided a more than ample basis for County Court to be assured that defendant was not entering a plea to a crime that she did not commit. Her guilt was abundantly clear, and she profited from a plea that she wanted and negotiated.

of what she did—what the majority calls an "isolated portion" of her allocution—she said:

> "I went to my grandmother's house with Jeffrey Hampshire. While we were there, we went outside, and he told me that he was going to steal from her. We went back inside. He told me that he was not going to do it, but as he went down the hall, he went back into the bedroom, and I thought that he was stealing from her, so I stood between where Jeff was and where my grandmother was and continued to talk with her in order for him not to be caught stealing from her, and in the course and in the furtherance of such crime, we caused the death of Ruth M. Witter later placing her body in Saratoga County."

The "stealing" described in this statement is larceny, not robbery or burglary. Robbery is "forcible stealing" (Penal Law § 160.00) and the theft described in the allocution was a theft by stealth, not by force. A person is guilty of burglary who "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). But, from all that appears in the allocution, defendant and her codefendant were lawfully present in her grandmother's house. One might surmise from the allocution that the two offenders killed defendant's grandmother after stealing her property. This is an appalling crime, but it is intentional murder, not felony murder.

The People claim, and the majority today agrees, that the defect in the allocution was cured, and that defendant admitted to burglary, in the following later exchange:

> "[THE PROSECUTOR]: And that day, having gained entry to Miss [*sic*] Witter's residence, did you remain in that residence unlawfully during the commission of the crime, and by that I mean, the stealing of the property and the causing of death of Mrs. Witter? . . .
>
> "THE DEFENDANT: Yes."

If the above colloquy is read in a literal, technical way, and common sense is disregarded, the majority is right—defendant did admit to remaining unlawfully in her grandmother's residence. But this is not a fair reading of the whole transcript, because "remains unlawfully" in the burglary statute has a legal meaning that most lay people would not understand. We interpreted those words in *People v Gaines* to refer to "*unau-*

*thorized* remaining in a building after lawful entry (as a shoplifter who remains on store premises after closing)" (74 NY2d 358, 362 [1989] [emphasis added]). We quoted in *Gaines* from the Practice Commentary to the burglary statute: "[t]he word 'remain' in the phrase 'enter or remain' is designed to be applicable to cases in which a person enters with 'license or privilege' but remains on the premises after termination of such license or privilege." (*Id.*, quoting Denzer and McQuillan, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 140 at 341-342 [1967].)

Thus, defendant here did not "remain unlawfully" in her grandmother's house unless her grandmother asked her to leave and she refused. Nothing indicates that this 19-year-old defendant, when she answered "yes" to the prosecutor's question, understood this technicality—and nothing either in the allocution or anywhere else in the record of this case suggests that any such request or refusal actually occurred.

In this context, the prosecutor's choice to ask defendant about the legal conclusion—"Did you remain unlawfully?"—rather than ask the obvious factual question—"Did you stay in your grandmother's house after being asked to leave?"—is a red flag. And I am not at all comforted—quite the reverse—by the majority's observation that the prosecutor's inquiry followed an off-the-record conference called to "fashion a question" (majority op at 781 n 1). Why was the best the prosecutor could do, after this brainstorming session, a legalistic question that seems designed to produce an incorrect answer? Why did no one suggest, in the off-the-record conference, that defendant be asked to state the facts supporting a robbery or burglary charge? Probably because no such facts existed. The best inference from the allocution, read as a whole, is that there was in fact no robbery, no burglary and no felony murder.

Because defendant's allocution was defective, her plea should be set aside. We do not face here, as we often do, the question of whether the plea defect is so egregious that the normal rules of preservation do not apply (*cf. People v Lopez*, 71 NY2d 662 [1988]). Here, defendant preserved the point by moving to withdraw her plea before sentence, some 10 weeks after the plea was entered. We made clear in *Lopez* (71 NY2d at 666 n 2, quoting *People v Nixon*, 21 NY2d 330, 350 [1967]) that, even where preservation is absent, a plea that appears from the allocution to be "baseless" will not be upheld. The plea to felony murder appears to be baseless here.

The problem in this case may well be that defendant, facing a well-supported charge of intentional murder, was willing to plead guilty, but was not willing to admit that she intentionally killed her grandmother. The parties may have compromised by agreeing on a plea to felony murder—while trying to walk delicately around the difficult fact that no felony murder occurred. If that is the case, the result here does not offend any sense of fairness; the majority may be correct in saying that defendant's plea was "voluntary, knowing and intelligent"—in the sense that she may have made a voluntary, knowing and intelligent choice to plead guilty to a crime she did not commit. But the law does not authorize this sort of shortcut to an equitable result.

The remedy when a defendant is prepared to plead guilty but is not prepared to admit his or her guilt is an *Alford* plea. We have said that "*Alford* pleas are—and should be—rare" because "*Alford* stands at the outer reaches" of our rules governing allocutions (*Silmon v Travis*, 95 NY2d 470, 474 n 1 [2000]). Such pleas are, however, permissible in New York (*People v Alexander*, 97 NY2d 482 [2002]; *People v Francabandera*, 33 NY2d 429 [1974]). To tolerate a contrived "admission" to a crime that probably never happened as a substitute for an *Alford* plea may produce an attractive result in a particular case, but it invites abuse in the future.

Accordingly, I dissent and vote to reverse defendant's conviction.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO and READ concur; Judge R.S. SMITH dissents and votes to reverse in an opinion in which Judge G.B. SMITH concurs.

Order affirmed in a memorandum.