◼ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KATHERINE M. SEEBER, Respondent. [943 NYS2d 282]—

Egan Jr., J. Appeal from an order of the County Court of Saratoga County (Scarano, J.), entered July 14, 2011, which granted defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting defendant upon her plea of guilty of the crimes of murder in the second degree and burglary in the third degree, after a hearing.

In February 2000, defendant and her then boyfriend, Jeffrey Hampshire, were indicted and charged with three counts of murder in the second degree in connection with the strangulation death of defendant's 91-year-old stepgreat-grandmother. Prior to trial, the People furnished defendant with a report prepared by State Police forensic scientist Garry Veeder, wherein Veeder opined that fibers found on the duct tape recovered from the victim's mouth were "identical in macroscopic and microscopic appearance" and "consistent with having originated from the same material as" a pair of black suede gloves that defendant had worn on the day in question. According to defense

---

counsel, this report directly controverted defendant's version of the events and undermined an otherwise viable defense to felony murder. Accordingly, counsel recommended that defendant plead guilty.

Defendant took counsel's advice and, in January 2001, pleaded guilty to murder in the second degree (*see* Penal Law § 125.25 [3] [felony murder]) in full satisfaction of the February 2000 indictment, as well as burglary in the third degree (*see* Penal Law § 140.20) in satisfaction of a subsequent indictment stemming from an unrelated incident. Hampshire, however, elected to proceed to trial and was acquitted. County Court denied defendant's subsequent motion to withdraw her plea and thereafter imposed the agreed-upon concurrent sentences. Upon appeal, this Court affirmed (*People v Seeber*, 4 AD3d 620 [2004]), as did a divided Court of Appeals (*People v Seeber*, 4 NY3d 780 [2005]).

Several years later, investigations conducted by the State Police and the Office of the Inspector General revealed that Veeder failed to follow laboratory protocols and engaged in conduct that "raise[d] serious questions about [his] competence as a forensic scientist and the quality and integrity of his work"— specifically with respect to various fiber evidence analyses he performed between 1993 and 2008.[1] As a result, defendant moved to vacate the judgment of conviction alleging, among other things, that the People obtained her plea through fraud or misrepresentation, that she was deprived of due process of law and that she was denied the effective assistance of counsel (*see* CPL 440.10 [1] [b], [h]). Following a hearing, County Court granted defendant's motion, vacated the judgment of conviction and ordered a trial. This appeal by the People ensued.[2]

Initially, to the extent that defendant sought to vacate her judgment of conviction pursuant to CPL 440.10 (1) (f) and/or (g), County Court properly denied her motion as the cited subdivisions are, by the plain language of the statute, limited to instances where the underlying judgment of conviction was obtained following a trial. Defendant's attempt to seek relief under CPL 440.10 (1) (h) is equally unavailing because no *Brady* violation occurred. A *Brady* violation requires, among other things, a showing that the People suppressed the evidence at issue (*see People v Fuentes*, 12 NY3d 259, 263 [2009]). Here, there is no question that defendant was provided with a copy of the

---

**1.** Shortly after being approached by the State Police in connection with the investigation, Veeder committed suicide.

**2.** Defendant's trial has been stayed by order of this Court pending the outcome of this appeal.

relevant fiber analysis report, and the People certainly cannot be said to have "suppressed" Veeder's procedural shortcomings and professional misconduct when such information did not come to anyone's attention until nearly a decade after defendant's plea was obtained (*see People v Ortega*, 40 AD3d 394, 395 [2007], *lv denied* 9 NY3d 992 [2007]). Nor are we persuaded that defendant was denied the effective assistance of counsel in this regard. We do, however, believe that defendant stated a viable claim for relief under CPL 440.10 (1) (b) and, further, that County Court did not abuse its sound discretion (*see generally People v Blackman*, 90 AD3d 1304, 1311 [2011]; *People v Barber*, 13 AD3d 898, 902 [2004], *lv denied* 4 NY3d 796 [2005]) in granting her motion to vacate the judgment of conviction upon this ground. Accordingly, we affirm County Court's order.

Pursuant to CPL 440.10 (1) (b), a judgment of conviction may be vacated upon the ground that it "was procured by duress, misrepresentation or fraud on the part of the court or a prosecutor *or a person acting for or in behalf of a court or a prosecutor*" (emphasis added). To be sure, there is absolutely nothing in the record to suggest that either the Saratoga County District Attorney's Office or the State Police were aware—prior to the time that defendant entered her guilty plea—that Veeder cut certain procedural corners in various fiber analyses that he performed during the relevant time period, nor are we suggesting that either the prosecutor or the State Police—save Veeder—did anything improper here. It is equally clear, however, that Veeder routinely failed to follow appropriate procedural protocols in conducting fiber analyses and, in this case, effectively overstated the results thereof.[3] In our view, that overstatement—born of insufficient training and an admitted failure to adhere to established procedural protocols—consti-

---

**3.** As noted previously, Veeder had opined in one of his written reports that fibers found on the duct tape recovered from the victim's mouth were "identical in macroscopic and microscopic appearance" and "consistent with having originated from the same material as" a pair of black suede gloves that defendant had worn on the day in question. However, as set forth in the report generated by the Office of the Inspector General, 28% of the fiber evidence cases handled by Veeder were found to be substantively deficient, "rais[ing] serious questions [as to his] competenc[y]." Notably, Veeder admitted "that he had violated laboratory protocols and that [certain] values he had reported on worksheets in his fiber evidence cases had not been determined by proper procedure or by any test at all." Moreover, Peter DeForest, a Ph.D. and former professor of forensic science who testified on behalf of defendant at the CPL article 440 hearing, stated that Veeder's use of the term "identical" in the cited report was inappropriate and, further, that "any kind of comparison . . . beyond just . . . a similarity would be . . . extremely difficult" and "misleading."

tutes a misrepresentation by an individual acting on behalf of the People within the meaning of CPL 440.10 (1) (b). Further, regardless of his motivation for failing to follow established procedures, Veeder's misconduct directly relates to the fiber analysis reports generated here and, as such, cannot be characterized as unrelated or collateral bad acts (*compare People v Longtin*, 245 AD2d 807, 809-810 [1997], *affd* 92 NY2d 640 [1998], *cert denied* 526 US 1114 [1999]; *People v Johnson*, 226 AD2d 828, 829 [1996], *lv denied* 88 NY2d 987 [1996]).

While the People's knowledge of the misconduct or misrepresentation at issue indeed is a relevant consideration in determining whether a *Brady* violation has occurred (*see e.g. People v Ortega*, 40 AD3d at 395; *People v Roberson*, 276 AD2d 446, 446 [2000], *lv denied* 96 NY2d 805 [2001]; *People v Muniz*, 215 AD2d 881, 883-884 [1995]), such knowledge (or here, the lack thereof) is not dispositive of whether a misrepresentation has occurred within the meaning of CPL 440.10 (1) (b). Veeder—as an employee of the State Police—qualifies as a person acting on behalf of the prosecution (*see People v Santorelli*, 95 NY2d 412, 421 [2000]), and it is clear that the fiber analysis he performed here was, at the very least, misleading. That, in our view, is sufficient to afford defendant a basis for relief under CPL 440.10 (1) (b)—notwithstanding the fact that the People admittedly were unaware of Veeder's underlying misconduct.[4]

Indeed, requiring a defendant to demonstrate that the People were aware of the subject misrepresentation in order to prevail under CPL 440.10 (1) (b) potentially sets the stage for a situation where a truly innocent person, whose conviction was obtained solely upon the basis of admittedly falsified, manufactured or otherwise unreliable evidence, might remain in prison simply because the People were unaware—at the time the defendant's plea was obtained—of misfeasance on the part of a law enforcement representative. Such a result surely is not what the Legislature intended when it enacted CPL 440.10 (1) (b).[5]

As the proper interpretation and application of CPL 440.10 (1) (b) has implications far beyond the matter now before us,

---

4. Our decisions in *People v Thomas* (53 AD3d 864 [2008], *lv denied* 11 NY3d 858 [2008]) and *People v Drossos* (291 AD2d 723 [2002]) are not to the contrary, as neither case holds that the People must be aware of the underlying fraud or misrepresentation in order for a violation of CPL 440.10 (1) (b) to occur.

5. Notably, the Legislature explicitly requires knowledge on the part of the prosecutor (or the court) when a defendant seeks to vacate his or her judgment of conviction pursuant to CPL 440.10 (1) (c). No similar language is found in CPL 440.10 (1) (b) and, had the Legislature intended to impose such

the construction to be afforded the statute necessarily is our primary concern. That said, the facts and history of this particular case also give us pause. Although defendant's conviction ultimately was affirmed by both this Court and a divided Court of Appeals (*People v Seeber*, 4 AD3d 620 [2004], *affd* 4 NY3d 780 [2005]), we cannot overlook the fact that the two dissenting Judges expressed serious concerns regarding the factual sufficiency of defendant's plea (*People v Seeber*, 4 NY3d 780, 785 [2005, Robert Smith, J., dissenting])—long before Veeder's misconduct was discovered—noting that, in light of the charges then pending against her, defendant may well have elected "to plead guilty to a crime she did not commit" (*id.*).[6] Indeed, defendant asserts, and her original defense counsel confirms, that she was persuaded to plead guilty after being confronted with the contents of Veeder's report—a report that we now know, at the very least, overstated its ultimate conclusion. Under these circumstances, County Court properly exercised its discretion by vacating the judgment of conviction and permitting the matter to proceed to trial.

Rose, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the order is affirmed.

_____

a requirement in the context of this particular subdivision, it surely could have included language to that effect.

**6.** Although this latter observation admittedly was made in another context, it nonetheless underscores the troubling nature of this case.