■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHARMELLE JOHNSON, Appellant. [952 NYS2d 547]—

Defendant encountered the victim, who was intoxicated, on the sidewalk outside a bar in upper Manhattan in the early morning hours of February 4, 2008. The victim could only recall walking home several hours later and realizing that her bag, keys and cell phone were missing. The superintendent of her building let her into her apartment, where she slept until midday. Later that day, based on her physical condition, she realized she had been forcibly raped and went to Metropolitan Hospital, where staff examined her and used a rape kit to extract DNA evidence.

On May 12, 2008, the results of DNA testing from the kit found a match to defendant, a prior felony offender. Defendant was also in possession of the victim's cell phone. He initially denied that he recognized the victim, when police showed him her photograph. However, after his arrest, he admitted that he had helped her up and taken her to the lobby of a nearby building where he had sex with her.

Defendant pleaded guilty to rape in the second degree.* Penal Law § 130.30 (2) provides that a person is guilty of rape in the second degree when he "engages in sexual intercourse with another person who is incapable of consent by reason of being

---

* Defendant's indictment charged him with two counts of rape in the first degree. He pleaded guilty to this charge, but the plea court granted his subsequent motion to withdraw that plea.

mentally disabled or mentally incapacitated." A person is "mentally incapacitated" when she is "rendered temporarily incapable of appraising or controlling [her] conduct owing to the influence of a narcotic or intoxicating substance administered to [her] without [her] consent" (Penal Law § 130.00 [6]).

During his plea allocution, defendant agreed that on February 4, 2008, he encountered the victim who was "in an intoxicated state." The court asked him to describe what happened, and he said, "[s]he was sitting there on the side and we started talking. And she walked with me down to the Projects, and that's where we had sex at, and smoked marijuana and had sex there." The court stated, "I would not accept the plea on that basis. That would not be a crime." Defendant added, "She was drunk. I guided her into the Projects and had sex with her." The court then asked further:

"THE COURT: Okay. Is it true, sir, that you knew she was too drunk to really make a decision about whether she did or did not want to have sex?

"DEFENDANT: Yes . . .

"THE COURT: You could see she was mentally incapacitated apparently from drinking, is that right?

"DEFENDANT: Yes."

Defendant confirmed that he nevertheless "went ahead and had sexual intercourse with her." He further confirmed that he was pleading guilty because he was guilty of the charge. Defendant was arraigned as a second felony offender and certified as a sex offender.

Defendant now seeks to have his plea set aside. He argues that his plea violated his constitutional right to due process because it was not entered knowingly, intelligently and voluntarily. More specifically, he maintains that the allocution negated a key element of the offense of second degree rape, that the victim was "mentally incapacitated," because the allocution did not establish that the victim became intoxicated involuntarily.

Contrary to defendant's claim and the dissent's focus on an "isolated portion" (*People v Seeber*, 4 NY3d 780, 781 [2005]) of the allocution, defendant's plea did not *negate* the "mentally incapacitated" element of rape in the second degree. "[M]erely showing that the defendant did not expressly admit a particular element of the crime in the factual allocution is not sufficient, by itself, to raise a constitutional claim" (*People v Moore*, 71 NY2d 1002, 1005 [1988]; *see also People v Lopez*, 71 NY2d 662, 666 n 2 [1988]). Rather, "all of the circumstances surrounding

the plea must be considered to determine whether the defendant understood the nature of the charges against him" (*People v Moore*, 71 NY2d at 1005).

Here, the allocution's failure to address how the victim became intoxicated does not warrant vacatur of the plea. Indeed, "all of the circumstances surrounding the plea" demonstrated that defendant "understood the nature of the charges against him" (*People v Moore*, 71 NY2d 1002, 1005 [1988]). Defendant's extensive experience with the criminal justice system, the favorable terms of the plea bargain, the allocution itself and the protracted history of this case—including defendant's prior plea—all indicate that defendant entered his plea voluntarily, knowingly and intelligently (*see People v Seeber*, 4 NY3d at 780). Although the crime to which defendant pleaded guilty is not a lesser included offense of the first-degree rape counts in the indictment, it shared common elements with those counts, it involved the same victim and "essentially the same factual circumstances" (*People v Hahn*, 10 AD3d 809, 810 [2004], *lv denied* 3 NY3d 757 [2004]). Thus, the plea was not jurisdictionally defective. Concur—Tom, J.P., Mazzarelli and Moskowitz, JJ.

Renwick and Abdus-Salaam, JJ., dissent in a memorandum by Abdus-Salaam, J., as follows: I would reverse, vacate the plea, and remand for further proceedings consistent herewith.

Contrary to the majority's analysis, defendant's factual recitation during his plea allocution did, in fact, negate an essential element of the crime to which he was pleading guilty. Thus, the court had a duty to inquire further to ensure that defendant understood the nature of the charge and that his plea was intelligently entered (*see People v Lopez*, 71 NY2d 662, 666 [1988]). To be guilty of second-degree rape pursuant to Penal Law § 130.30 (2), the defendant must have "engage[d] in sexual intercourse with another person who is incapable of consent by reason of being . . . mentally incapacitated." The term "mentally incapacitated" has a specific definition under the Penal Law; a person is "mentally incapacitated" if she "is rendered temporarily incapable of appraising or controlling [her] conduct owing to the influence of a narcotic or intoxicating substance *administered to [her] without [her] consent,* or to any other act committed upon [her] without [her] consent" (Penal Law § 130.00 [6] [emphasis added]).

The allocution and all of the pre-plea evidence in this case indicates that the victim became intoxicated when she voluntarily consumed alcohol before defendant encountered her on the sidewalk in front of a bar and they had sex in the lobby of a building. As is amply illustrated by the colloquy between the

court and defendant, as set forth in the majority opinion, the sexual encounter with the victim did not conform with the statutory definition of "mentally incapacitated." Thus, the court should not have accepted the plea "without making further inquiry to ensure that defendant [understood] the nature of the charge and that the plea [was] intelligently entered" (*Lopez*, 71 NY2d at 666).

Significantly, rather than confirming that defendant understood the elements of the offense to which he was pleading, the court indicated its own misunderstanding of the statutory definition of "mentally incapacitated" when it asked defendant whether he had encountered the victim in an intoxicated state, and then further inquired whether he knew that "she was too drunk to really make a decision about whether she did or did not want to have sex" and whether he "could see she was mentally incapacitated apparently from drinking" but "went ahead and had sexual intercourse with her anyway." The majority glosses over the court's evident misunderstanding of the elements of rape in the second degree and asserts that I have focused on an "isolated portion" of the allocution. It is difficult to understand the majority's position that defendant's plea was knowing and voluntary when the court itself did not understand the nature of the charge to which defendant was pleading. I cannot agree with the majority's assessment that defendant's "extensive experience with the criminal justice system" and defendant's prior plea in this case show that defendant understood "the nature of the charges against him" (*People v Moore*, 71 NY2d 1002, 1005 [1988]), when the court itself lacked that understanding.

As for the majority's reference to the favorable terms of the plea bargain, that defendant had sex with someone who was very drunk does not make him guilty of first-degree rape, and thus, his plea to second-degree rape was not necessarily a favorable outcome. Even if it were, and defendant wished to plead guilty to avoid the risk of conviction of the more serious crime charged in the indictment, "[t]he fact remains, however, that, before accepting a plea of guilt where the defendant's story does not square with the crime to which he is pleading, the court should take all precautions to assure that the defendant is aware of what he is doing. Manifestly, no such cautionary effort was here made" (*People v Serrano*, 15 NY2d 304, 310 [1965]).

In sum, the failure of the court to explain to defendant the critical element of "mentally incapacitated," and to make further inquiry to ensure that defendant understood the nature of the charge and the plea requires vacatur of the plea (*id.* at 310;

*see also People v Lawrence*, 192 AD2d 332, 333 [1st Dept 1993], *lv denied* 81 NY2d 1075 [1993]; *compare People v Atkins*, 92 AD3d 551 [1st Dept 2012], *lv denied* 19 NY3d 957 [2012]) especially under these circumstances where the technical, statutory definition of the crime does not conform with its common-sense meaning.