*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 19, 2015                    105972
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                              MEMORANDUM AND ORDER

QUENTIN LEWIS,
                        Appellant.
_____

Calendar Date:  January 5, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Clark, JJ.

_____

        Andrea G. Hirsch, New York City, for appellant.

        Joseph Stanzione, District Attorney, Catskill (Danielle D. McIntosh of counsel), for respondent.

_____

McCarthy, J.P.

        Appeal, by permission, from an order of the County Court of Greene County (Pulver Jr., J.), entered July 16, 2013, which denied defendant's motion pursuant to CPL article 440 to vacate the judgment convicting him of the crime of manslaughter in the first degree, without a hearing.

        Defendant, who was a prison inmate, was charged with murder in the second degree and manslaughter in the first degree in connection with an altercation that involved defendant and two other inmates and which resulted in one of them dying from a stab

wound.[1]  At the ensuing jury trial, the People called, among other witnesses, inmates Wilfredo Galarza and Miguel Roman, who were the only witnesses who testified that they saw defendant fighting with the victim.  The jury acquitted defendant of murder in the second degree but found him guilty of manslaughter in the first degree.  County Court sentenced him, as a second violent felony offender, to 25 years in prison.  This Court affirmed his conviction on appeal (300 AD2d 827 [2002], lv denied 99 NY2d 630 [2003]).  Defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction, alleging that the People committed a Brady violation by failing to disclose that Roman and Galarza received favorable treatment in exchange for their testimony against defendant.  County Court denied the motion without a hearing.  Defendant, by permission, appeals.

We reverse, because defendant was entitled to a hearing on his motion.  Due process requires that the People disclose to the defendant any evidence in their possession that is "material to guilt or punishment" (People v Fuentes, 12 NY3d 259, 263 [2009]; see Brady v Maryland, 373 US 83, 87 [1963]; People v Steadman, 82 NY2d 1, 7 [1993]).  The People must disclose evidence relating to a witness's credibility, including "the 'existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness'" (People v Novoa, 70 NY2d 490, 496 [1987], quoting People v Cwikla, 46 NY2d 434, 441 [1979]; see People v Johnson, 107 AD3d 1161, 1164-1165 [2013], lv denied 21 NY3d 1075 [2013]).  "To establish a Brady violation, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Fuentes, 12 NY3d at 263; see People v Serrano, 99 AD3d 1105, 1106 [2012], lv denied 20 NY3d 1014 [2013]).  When a specific request has been made for the evidence that was withheld, "the materiality element is established provided there exists a 'reasonable possibility' that it would have changed the result of the proceedings" (People v Fuentes, 12 NY3d at 263, quoting

_____

[1]  The codefendant inmate pleaded guilty to manslaughter in connection with this incident.

People v Vilardi, 76 NY2d 67, 77 [1990]; see People v Bond, 95 NY2d 840, 843 [2000]).

At trial, Roman testified that he witnessed defendant and the codefendant in a confrontation with the victim and that defendant was making thrusting motions toward the victim. Roman testified that he was transferred to Clinton Correctional Facility after speaking to prison officials about defendant's involvement in this fight. Defense counsel attempted to elicit that Roman agreed to cooperate with correction officers to obtain favorable treatment, including a transfer to Clinton Correctional Facility because that facility allowed conjugal visits and his current facility did not, but Roman denied wanting a transfer and that he had been able to see his wife since the transfer.

In his affidavit submitted in support of defendant's CPL 440.10 motion, however, Roman averred that on the night of the fight, he was taken to see "the Investigator General." After Roman denied seeing anything, prison staff threatened him to make him cooperate in the investigation. Roman specifically alleged that correction officers had found marihuana in his belongings and threatened to charge him with drug possession, send him to solitary confinement and cut off his correspondence privileges with his wife, who was also an inmate at the time. Roman further asserted that he was questioned again months later and, when he refused to testify before the grand jury, he was threatened with charges of perjury as well as drug possession. He then agreed to testify before the grand jury and at trial. Defendant also submitted affidavits from four other inmates who lived in the dorm where the fight occurred, all averring that they were subjected to threats or offered promises in exchange for information regarding this incident. Allegations that Roman provided coerced testimony are relevant to his credibility as a witness, and could have been used for impeachment purposes (see People v Colon, 13 NY3d 343, 349 [2009]). This meets the first element to establish a Brady violation.

As to the second element, the People concede that they did not disclose to defendant prior to trial any threats or promises concerning Roman. The People have a duty to learn of favorable evidence in the possession of law enforcement officials, and such

information is imputed to the People for Brady purposes (see Kyles v Whitely, 514 US 419, 437-438 [1995]; People v Santorelli, 95 NY2d 412, 421 [2000]; People v Seeber, 94 AD3d 1335, 1338 [2012]). Evidence gathered by prison staff, however, generally is not "under the control or in the possession of the People or its agents, but was instead in the possession of an administrative agency that was not performing law enforcement functions" (People v Smith, 89 AD3d 1148, 1150 [2011], lv denied 19 NY3d 968 [2012]; see People v Kelly, 88 NY2d 248, 252 [1996]; People v Howard, 87 NY2d 940, 941 [1996]). While Roman avers that correction officers threatened him on the day of the fight, he also mentioned that "the Investigator General" was present. It is unclear who this individual is, and whether he or she is employed by the prison or an outside police agency. When Roman discussed being threatened prior to the grand jury presentment, he vaguely identified the sources of those threats as "the authorities." Similarly, two of the other inmates who submitted affidavits regarding threats did not clearly identify the threateners, referring to them by terms such as "questioner[s]." The other two inmates stated that they were questioned by outside police or the State Police. In response to defendant's motion, the People did not submit any proof regarding who questioned inmates following this incident. Thus, it is unclear whether Roman was threatened by prison officials whose knowledge would not be imputed to the People, or by law enforcement officers affiliated with an outside police agency, such that the People would be duty-bound to disclose any evidence within the knowledge of those officers. Due to this factual question, a hearing is necessary on the second element to establish a Brady violation, whether the People suppressed the evidence (see CPL 440.30 [4], [5]).[2]

---

[2] Defendant argues that the People waived the right to a hearing by not presenting evidence, such that his motion should be granted outright, without a hearing. The People are deemed to have impliedly conceded the truthfulness of a defendant's factual allegations by failing to dispute them (see People v Wright, 86 NY2d 591, 595-596 [1995]). Although the People's failure in that regard would establish defendant's allegations that Roman was threatened or offered promises in exchange for his testimony,

As to the third element of prejudice due to materiality, inasmuch as a specific request was made here, defendant only needed to show the existence of a "'reasonable possibility' that [the undisclosed evidence] would have changed the results of [his trial]" (People v Fuentes, 12 NY3d at 263). At trial, only two witnesses identified defendant as having been involved in the fight that led to the victim's death. Galarza initially identified defendant, but was then equivocal as to his identification. On cross-examination, Galarza admitted that his vision was poor and he was not wearing his glasses at the time of the fight, he had mental health issues and took psychotropic or psychiatric medications. His testimony was relatively weak. Roman's identification of defendant was much stronger, creating a reasonable possibility that the inability to impeach his testimony with the undisclosed evidence affected the outcome of defendant's trial.

The People argue that any alleged threats are not material because Roman has not recanted his testimony — meaning that it has not been shown to be false — and he was already impeached at trial. We are unpersuaded. It is not necessary for a defendant to prove that a witness's testimony was false to establish a Brady violation; the jury has the obligation to assess credibility, and the People impede the exercise of that obligation when they fail to disclose evidence that could be used for impeachment purposes (see People v Novoa, 70 NY2d at 497). As for the impeachment at trial, Roman was questioned about the possible benefit of a transfer, but he denied wanting the transfer or receiving visits from his wife due to the transfer. Defendant questioned Roman regarding his criminal history and that he previously informed defense counsel that he did not see anything on the date in question. Questioning a witness's credibility based on prior convictions or a prior inconsistent statement is fundamentally different, however, than "the opportunity to challenge the credibility of the People's key

---

defendant did not conclusively establish other of his factual assertions (i.e., who questioned Roman). Thus, as factual questions remain, a hearing is necessary despite the People's failure to dispute defendant's factual allegations.

witness as a liar" by eliciting a motive for the witness to fabricate his or her testimony and possibly incriminate someone falsely (People v Bond, 95 NY2d at 843; compare People v Dawkins, 43 AD3d 705, 705-706 [2007], lv denied 10 NY3d 809 [2008]).  As defendant's sworn submissions tend to substantiate, but do not conclusively substantiate, each element to establish a Brady violation, a hearing is required (see CPL 440.30 [5]; compare CPL 440.30 [3], with [4]).

Egan Jr., Lynch and Clark, JJ., concur.


ORDERED that the order is reversed, on the law, and matter remitted to the County Court of Greene County for further proceedings not inconsistent with this Court's decision.




ENTER:

Robert D. Mayberger
Clerk of the Court