The People of the State of New York, Respondent,
 against
Alyssa Faller, Appellant. Jonathan B. Manley, for appellant.
Nassau County District Attorney (Jason R. Richards, Jared A. Chester of counsel), for respondent.

Appeal from a judgment of the District Court of Nassau County, First District (David Goodsell, J.), rendered June 2, 2016. The judgment convicted defendant, upon her plea of guilty, of endangering the welfare of a child.




ORDERED that the judgment of conviction is affirmed and the matter is remitted to the District Court for further proceedings pursuant to CPL 460.50 (5).
According to the misdemeanor information and supporting deposition, on February 25, 2014, defendant, Alyssa Faller, who was 23 years old, was employed as a nanny of a two-year-old child. The child's parents had observed a change in their son's emotional behavior, and he had unexplained marks and scratches on his face. As a result, the couple installed two closed-circuit cameras in their home. A video obtained from one of the cameras depicted defendant swinging the child by his ankles in a spinning motion for a period of 30-45 seconds, causing the child to become dizzy and lethargic. Defendant was arrested and charged with endangering the welfare of a child (Penal Law § 260.10 [1]).
At a May 12, 2014 court appearance before Judge Sharon M.J. Gianelli, the court indicated that the case had been adjourned so that the court could review the video in order "to provide both sides with a commitment as to a package disposition." The court stated that it was willing to sentence defendant to 20 days of incarceration together with probation. At a July 14, 2014 court appearance before Judge Gianelli, defendant's original counsel, after an "extended bench conference," asked for an adjournment to discuss the matter with defendant and her family. On October 23, 2014 before Judge Gianelli, defendant's attorney told the court that defendant was engaged in counseling and that she had agreed with the court's request that she get an evaluation. The court stated that the results of that evaluation would affect whether or not there is an offer in this case.
On November 18, 2014 before Judge Gianelli, defense counsel indicated that defendant was "engaged in a new treatment modality." Counsel wanted "to provide some information about that on the next court date and speak to the DA about a plea." The case was adjourned to [*2]December 16, 2014, at which time counsel told Judge Gianelli that "[t]here is a treatment update. . . . She is doing excellent." The People declined to make an offer and stated that they were ready for trial. 
On February 10, 2015, before Judge David Goodsell, defendant's attorney stated that he had a good treatment update from defendant's counseling program and wanted to make a counteroffer to the People. Counsel asked for a trial date, and the People indicated that they were ready.
On May 7, 2015 before Judge Goodsell, defendant agreed to waive a jury and be tried by the court. Defense counsel acknowledged receipt of Rosario material and a witness list, and indicated that there was no need for a Sandoval hearing. The People indicated that they were not ready to present testimony, and the court agreed to adjourn the case until the next Tuesday. Defense counsel then stated, among other things, that the "case is dragging on for so many months without an offer. Now, with their feet to the fire, we have no witnesses." In addition, counsel moved in limine with respect to the video. Counsel indicated that he had seen the videotape. He argued, among other things, that the People might be unable to confirm the date it was made, or whether it was altered or doctored in any way. Counsel asked the court to deny its admission at trial. The court determined that the defense motion was "unfounded at this time. . . . We'll deal with the admissibility of the actual videotape, if and when the People offer it." The court permitted the defense to renew the application.
On May 12, 2015 before Judge Goodsell, defendant pleaded guilty to the charge of endangering the welfare of a child. The following then occurred:
"THE COURT: Do you understand that a plea of guilty is the same as a conviction after trial?
THE DEFENDANT: Yes, Your Honor.
THE COURT: By taking this plea, you're giving up your legal right[s], including the right to a jury trial, right to present a defense, right to cross-examine witnesses, your right to testify, your right to remain silent? Do you understand you're giving those rights up?
THE DEFENDANT: Yes, sir, Your Honor.
THE COURT: Has anyone forced or threatened you to get you to plead guilty?
THE DEFENDANT: No.
THE COURT: Are you entering the plea voluntarily?
THE DEFENDANT: Yes.
THE COURT: Anyone promise you anything to get you to plead guilty?
THE DEFENDANT: No, Your Honor.
THE COURT: You're pleading guilty to a misdemeanor, a crime. Do you understand that?
THE DEFENDANT: Yes.
* * *
THE COURT: My commitment to your attorney is to sentence you to a cap of no more than 30 days in jail to be followed by the balance of three years on probation. There will be mandatory surcharges and a DNA assessment.
* * *
Do you understand that?
THE DEFENDANT: Yes.
* * *
THE COURT: On February 25th, 2014, 10:15 a.m., 69 Akins [sic] Road in Manhasset, Nassau County, State of New York, did you knowingly act in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 17 [years] of age by swinging a child by their ankles? That child being two years of age at the time?
THE DEFENDANT: Yes, Your Honor."
Before the scheduled date for sentencing, defendant retained new counsel. On October 5, 2015, defendant moved to withdraw her guilty plea on the ground that prior counsel was ineffective and pressured her to plead guilty. New counsel alleged, among other things, that no pretrial motions had been filed and no hearings had been conducted.
In an affidavit in support of the motion, defendant alleged that, among other things, prior counsel had never met with her at his office, and had only spoken to her "immediately prior to entering and sometimes upon exiting the [c]ourt room on scheduled Court dates." Counsel had never provided her with a copy of the video, an opportunity to view it, or any other relevant evidence or paperwork related to this case. Defendant further stated that, on or about September 4, 2014, counsel had told her that the matter would be resolved with a plea to disorderly conduct, a violation, "as the video would be inadmissible and the complainants were not showing up for Court dates." Defendant asserted that there had been about 10 court appearances over an eight-month period. At each appearance, she allegedly "was reassured by [her] attorney . . . that the violation plea was still going to happen." When she had asked her prior counsel if he had moved to suppress the video, counsel told defendant that, if he did so, the plea offer to disorderly conduct would be withdrawn. "Any further inquiries . . . were quickly dismissed, as [counsel] was always on his way to another courtroom or rushing to us from a previous [c]ourtroom." Defendant alleged that she had not been prepared for trial and had been repeatedly assured that a trial was not even a remote possibility. In May 2015, she was advised that a plea "as charged" was the only way to avoid the potential of jail time and that she faced a year in jail if she went forward with a trial. Defendant asserted that her statements at the plea were not "based upon a full understanding of the proceedings but were simply the answers directed by [her] attorney as the only means to avoid an unpleasant outcome."
The People opposed the motion on the ground, among others, that defendant had failed to sufficiently demonstrate that the plea was not knowingly, intentionally and voluntarily entered. Defendant was essentially claiming ineffective assistance of counsel at the plea, but she failed to sufficiently demonstrate that her attorney's performance had been deficient, that she had been prejudiced, and that, but for counsel's errors, the result of the proceeding would have been different. There were no means by which the videotape could have been suppressed. Defendant had been advised of her rights and admitted her guilt. Defendant received an advantageous plea, and nothing in the record casts doubt on the effectiveness of counsel.
In a decision and order dated February 10, 2016, the District Court (David Goodsell, J.) denied defendant's motion to withdraw her plea, stating, in pertinent part, as follows:
"The record of the proceedings contradicts the position the defendant now takes. . . . The court relies upon the record created and finds the plea to have been entered knowingly, [*3]intelligently and voluntarily.
The claim of innocence now made is unsupported and contradicted by video evidence of the crime and statements made to probation following the plea during the preparation of a pre-sentence report. Claiming innocence of or mistake by a defendant after entering a knowing, intelligent and voluntary plea is insufficient to entitle the withdrawal of the plea."
Defendant was sentenced on June 2, 2016 to a term of 24 days of incarceration and three years of probation.
On appeal, defendant contends that she was denied the effective assistance of counsel at the plea. Her counsel had made no requests for discovery, made no pretrial motions, and requested no pretrial hearings. Counsel did not move to suppress the videotape. Counsel never spoke to her except in the hallway of the courthouse, and he had never prepared her for trial. Her plea was the result of undue influence and duress. She argues that the allocution failed to establish that she had engaged in an action likely to be injurious to the physical, mental or moral welfare of a child. Defendant claims that the allocution needed to include an "aggravating circumstance," such as physical injury.
We find that defendant was afforded the effective assistance of counsel and that the District Court did not improvidently exercise its discretion in denying her motion to withdraw her guilty plea. Contrary to defendant's contention, counsel did move to prevent the admissibility of the video, by way of an oral motion. A review of the numerous court appearances indicates that counsel attempted to obtain a noncriminal disposition for defendant. Counsel also had seen the videotape and was ready to proceed to a trial. On May 7, 2015, the People provided counsel with Rosario material and a witness list. Defendant waived a jury trial, which, under the circumstances of the case, was an effective strategy, as a jury would have viewed the highly incriminating videotape.
Defendant's claim that counsel never met with her other than in the courthouse hallway before and after appearances is without merit. At an October 23, 2014 appearance, defense counsel stated that defendant was engaged in counseling, and that she had agreed with the court's request that she get an evaluation. On November 18, 2014, counsel told the court that defendant was "engaged in a new treatment modality." Counsel wanted "to provide some information about that on the next court date and speak to the DA about a plea." On December 16, 2014, counsel provided the court with a treatment update. We note that new counsel's affirmation in support of the motion to withdraw the plea alleged that "[p]rior to the entry of the plea, on the date of May 12, 2015, and on prior dates, Alyssa Faller had conferenced this matter with her mother and [prior counsel], and expressed reluctance to enter a plea of guilty to any criminal charge."
Defendant was facing a term of incarceration of one year. Instead, she was sentenced to only 24 days of incarceration and three years of probation. Defendant received an advantageous plea, and acknowledged that she was pleading guilty knowingly and voluntarily. The record does not cast doubt on the apparent effectiveness of counsel (see People v Henry, 95 NY2d 563, 566 [2000]; People v Philpot, 99 AD3d 1025, 1026 [2012]). Defendant's claim that her factual allocution was insufficient is without merit, as she admitted that she knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 17 years of age by swinging a two-year-old child by his ankles (Penal Law § 260.10 [1]). Thus, the District Court did not improvidently exercise its discretion in denying the motion to withdraw the plea (see CPL 220.60
[3]; People v Seeber, 4 NY3d 780 [2005]; People v Atkins, 51 Misc 3d 144[A], 2016 NY Slip Op [*4]50709[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2016]). 
Accordingly, the judgment of conviction is affirmed.
MARANO, P.J., GARGUILO and BRANDS, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: April 12, 2018