[892 NE2d 365, 862 NYS2d 301]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BURTON JEFFREY HUNTER, Appellant.

Argued April 24, 2008; decided June 12, 2008

## POINTS OF COUNSEL

*Cheryl Coleman Law Offices,* Albany (*Cheryl Coleman* of counsel), for appellant. The *Brady* violation of admissible evidence at defendant's trial mandates a retrial regardless of its admissibility at such retrial. (*Brady v Maryland,* 373 US 83; *Miranda v Arizona,* 384 US 436; *Rhode Island v Innis,* 446 US 291; *People v Bethea,* 67 NY2d 364; *Kyles v Whitley,* 514 US 419; *People v Wright,* 86 NY2d 591; *United States v Gil,* 297 F3d 93; *People v Bryce,* 88 NY2d 124; *United States v Bagley,* 473 US 667; *People v Vilardi,* 76 NY2d 67.)

*Richard J. McNally Jr., District Attorney,* Troy (*Ian H. Silverman* of counsel), for respondent. I. Even if the determinative test for a *Brady* violation occurs at the time of trial, the evidence of the Schenectady County complaint was not *Brady* ma-

terial. (*Brady v Maryland,* 373 US 83; *People v Mandel,* 48 NY2d 952; *People v Chin,* 67 NY2d 22.) II. Upon retrial the defense should be precluded from questioning the victim about the Schenectady County complaint. III. It is consistent with the public policy of New York to preclude the defense from questioning the victim about the Schenectady County complaint. (*People v Westfall,* 95 AD2d 581.)

## OPINION OF THE COURT

SMITH, J.

Defendant was charged with rape, sodomy and sexual abuse, and convicted of sodomy, after a young woman testified that he raped and otherwise assaulted her during a visit to his home. Before defendant's trial the People learned, but did not tell defendant, that the same woman had recently accused another man of raping her in that man's home. We hold, based on the facts of this case, that the People violated their obligations under *Brady v Maryland* (373 US 83 [1963]).

I

The event at the center of this case took place on December 9, 2001. At the trial, which began on November 6, 2002, the 17-year-old complainant testified that she had met the 33-year-old defendant for the first time on the day in question, and accepted his invitation to watch a movie at his house. While she was there, she testified, defendant, against her will, penetrated her with his penis and his fingers and performed oral sex on her. Defendant testified that only oral sex took place, and that the complainant consented. He testified, in substance, that the complainant first welcomed his advances, then told him to stop; that he stopped as soon as she asked him to; and that, as soon as she put her clothes back on, she inexplicably ran out of the house. He testified that he pursued her to ask what the problem was, and that her reply was "You raped me."

The forensic evidence was inconclusive. Each side spent considerable effort in shoring up the credibility of one of the main witnesses, and tearing down the other's.

The People proved that the complainant made her accusation immediately after the event, to her 13-year-old friend and her mother. These two witnesses also testified that defendant admitted to them that the complainant had been saying "no" during their encounter. In addition, the People suggested that defendant's version of the events was inherently incredible.

Defendant, for his part, brought out substantial inconsistencies between the complainant's original account of the event and her testimony at trial. He produced witnesses (though not impartial ones) to support his claim that the complainant had met him before the evening in question. He called two witnesses to testify that the complainant was known in the community as a liar—and one of those witnesses was the complainant's own father.

The complainant's father also testified to an occasion when his daughter flew into such a violent rage that he threatened to call the police, and she responded by saying, "[G]o ahead, call the cops. I will tell them you raped me." He said that he did call the police, and that the complainant did not follow through on her threat—a point the People stressed in closing argument: "[W]hatever [the complainant] said, if she said anything, was not taken seriously by [her father's] own words, it didn't bother him. There was no police report. There was [sic] no statements to police. There were no charges filed."

The jury's verdict implies that it did not wholly believe or disbelieve either of the two main witnesses: it acquitted defendant of rape and sexual abuse, but convicted him of sodomy in the first degree (oral sex by forcible compulsion).

After the trial, defendant learned that a man named Parker had been indicted for raping the same complainant. The alleged Parker rape took place in Parker's home on October 10, 2002, some 10 months after the incident involving defendant and about a month before defendant's trial. In a statement given on the day of the event, Parker admitted to having sex with the complainant, but said she consented to it. On May 27, 2003, several months after defendant's trial, Parker pleaded guilty to attempted rape of the complainant, and received a seven years and six months sentence, to run concurrently with a sentence of equal length imposed on him for an unrelated robbery.

Defendant moved, pursuant to CPL 440.10, to set aside his conviction, claiming the People had withheld *Brady* material. After the motion was made, the parties stipulated that the prosecutor who tried the case had learned of the accusation against Parker shortly before defendant's trial, but had not told the defense about it.

County Court granted defendant's motion, but the Appellate Division reversed. Relying on *People v Mandel* (48 NY2d 952 [1979], *cert denied* 446 US 949 [1980]), the Appellate Division

held that evidence of complainant's accusation against Parker would not have been admissible at trial to impeach the complainant, because defendant had not shown either that the accusation was false or that it was similar enough to the complainant's accusation of defendant to suggest "a pattern of false complaints" (41 AD3d 885, 888 [2007]). The Appellate Division relied on Parker's guilty plea, but also said that, even before the guilty plea, defendant could not have shown the falsity of the Parker allegation.

A Judge of this Court granted leave to appeal, and we now reverse.

## II

*Brady* holds "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution" (373 US at 87). In this case, the parties dispute whether the complainant's accusation of Parker was "material" to the question of defendant's guilt. Where, as here, the defense did not specifically request the information, the test of materiality is whether "there is a reasonable probability that had it been disclosed to the defense, the result would have been different—i.e., a probability sufficient to undermine the court's confidence in the outcome of the trial" (*People v Bryce*, 88 NY2d 124, 128 [1996]). We conclude that that test is satisfied.

The Appellate Division held that the information about Parker was immaterial because, in the Appellate Division's view, it could not have been used to impeach the complainant's testimony at trial. Defendant argues that the information would be subject to *Brady* even if it was not itself admissible in evidence (*see United States v Gil*, 297 F3d 93, 104 [2d Cir 2002]), but we need not consider that argument because we disagree with the Appellate Division's view that it would have been inadmissible.

The Appellate Division's opinion puts heavy emphasis on Parker's guilty plea to attempted rape months after defendant's trial. But that plea was irrelevant to what the People's duties under *Brady* were at the time of trial and before. If the information known to the People when this case was tried was "favorable to [the] accused" and "material" within the meaning of *Brady*, defendant had a due process right to obtain it, and that right could not be nullified by post-trial events.

The Appellate Division held in the alternative that, even before Parker's guilty plea, information about the complainant's charge against him would have been inadmissible under *Mandel*, but the Appellate Division read *Mandel* too broadly. In that case, we held "that there was [no] abuse of the discretion vested in the trial court" when the court refused to permit impeachment of the victim's testimony with previous, allegedly false, rape complaints (48 NY2d at 954). We did not hold the evidence inadmissible as a matter of law. Here, assuming that County Court would have had discretion under *Mandel* to forbid impeachment of the complainant with the Parker information, it would also have had discretion to permit it—and County Court made clear, in its opinion granting defendant's CPL article 440 motion, that it would have exercised that discretion in defendant's favor. The information was, in substance, that the complainant had accused Parker of rape, as she had defendant; that her encounter with Parker, like her encounter with defendant, took place in the accused man's home; and that, according to Parker, the complainant willingly had sex with him and then lied about it. It would not have been an abuse of discretion for County Court to permit defendant to confront the complainant with these facts on cross-examination.

The remaining question is whether, if defendant had used the information about Parker to impeach the complainant, there is a reasonable probability he would have been acquitted. This is a close question, but our answer to it is yes. Admittedly, it would have seemed possible, even before Parker's guilty plea, that complainant's accusation of him was true; but it would also have seemed possible it was not, and thus the Parker evidence would have added a little more doubt to the jury's view of the complainant's allegations. We find it reasonably probable that a little more doubt would have been enough.

In this difficult case, an important point in the People's favor was the apparent implausibility of defendant's version of events: that the complainant suddenly interrupted their voluntary encounter and decided, for no obvious reason, to accuse him of a sexual assault. Defendant did try to suggest a motive for the false accusation—ill will between the complainant's mother and defendant's roommate, resulting from a romantic relationship between them—but the evidence of this was meager, and the motive seems a weak one. That the same complainant later made a similar accusation against another man, who also claimed their encounter was consensual, might well have

persuaded the jury to be significantly less skeptical of defendant's story, and more skeptical of the complainant's.

The People suggest that, since the jury heard the complainant's father testify that she threatened to accuse him falsely of rape, the information about Parker would have been essentially cumulative. We disagree. The Parker information was different from the father's testimony in significant ways: the motive for the threat the father described was obvious; the circumstances of the rape she supposedly threatened to accuse him of were not similar to those in defendant's case; and, as the People emphasized in summation, there were in the father's case "no statements to police . . . no charges filed." And even if the circumstances involving the complainant's father and Parker were similar, the Parker information would not be insignificant. A jury might well find that three actual or threatened allegations of rape raised larger questions about the complainant's credibility than two.

Accordingly, the order of the Appellate Division should be reversed, defendant's motion under CPL 440.10 to vacate his conviction granted, and a new trial ordered.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order reversed, etc.