[907 NE2d 286, 879 NYS2d 373]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE FUENTES, Appellant.

Argued February 12, 2009; decided April 7, 2009

POINTS OF COUNSEL

*Gruvman, Giordano & Glaws, LLP*, New York City (*Charles T. Glaws* of counsel), for appellant. I. The trial court erred in denying defendant-appellant's motion for mistrial in light of the prosecutor's intentional suppression of the "record of consultation." (*Brady v Maryland*, 373 US 83; *United States v Bagley*, 473 US 667; *Giglio v United States*, 405 US 150; *People v Baxley*, 84 NY2d 208; *People v Baranek*, 287 AD2d 74; *People v Rensing*, 14 NY2d 210; *People v Dudley*, 167 AD2d 317; *People v Knowell*, 127 AD2d 794; *People v Gregg*, 90 AD2d 812; *People v Freshley*, 87 AD2d 104.) II. Contrary to the Appellate Division's decision and order, there was no "meaningful opportunity" to use the *Brady* material. (*People v Cortijo*, 70 NY2d 868; *People v Myron*, 28 AD3d 681; *People v Steadman*, 82 NY2d 1.) III. The *Brady* violation in this one-witness case cannot be considered harmless error. (*Napue v Illinois*, 360 US 264; *People v Marzed*, 161 Misc 2d 309; *People v Wallert*, 98 AD2d 47.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Anne C. Feigus* and *Leonard Joblove* of counsel), for respondent. The People were not obligated to disclose the record of the complainant's consultation with a psychiatrist because there is no reasonable probability that the disclosure of that document would have changed the outcome of the trial. (*Brady v Maryland*, 373 US 83; *Giglio v United States*, 405 US 150; *Strickler v Greene*, 527 US 263; *United States v Bagley*, 473 US 667; *Kyles v Whitley*, 514 US 419; *People v Vilardi*, 76 NY2d 67; *People v Hunter*, 11 NY3d 1; *People v Bryce*, 88 NY2d 124; *People v Chin*, 67 NY2d 22; *People v Drake*, 7 NY3d 28.)

## OPINION OF THE COURT

CIPARICK, J.

In this appeal, we are asked to determine whether the People committed a constitutional violation (*see Brady v Maryland*, 373 US 83 [1963]) by their nondisclosure to defendant of a "record of consultation" prepared by a hospital psychiatrist who interviewed a rape victim and noted her feelings of depression and minimal marijuana use. Because the undisclosed document is not material, the People's nondisclosure, while ill-advised, does not constitute a *Brady* violation.

I

The 22-year-old female victim testified that in the early morning hours of January 27, 2002, she, her friend and her friend's

mother and sister together boarded a Brooklyn-bound train at Times Square, in Manhattan, to return home, after spending the evening at an arcade. The victim, who resided in a different neighborhood than her friends, switched trains and continued her journey alone. As she walked home, she noticed defendant walking closely behind her. He entered the building and while inside the elevator, he placed a knife to her neck and threatened to cut her if she resisted. He then led her to the roof of the building, where he sodomized and raped her.

The victim further testified that, after the rape, defendant forced her to walk with him to the subway. During the walk, he casually conversed with her. Before boarding the train, he took the victim's cell phone, turned it off and wiped it with his shirt sleeve, while also warning her not to call anyone or to report the crime. Out of fear, she did not call the police at that time, nor tell her mother of the rape when she returned home. However, several hours later, the victim went to her friend's apartment—the same friend she had been with the night before—and told her and her mother about the rape. She then sought medical attention at a local hospital. Hospital staff performed both a physical and psychiatric examination and pre-pared a "rape kit," which yielded a male DNA sample.

The police were notified and they interviewed the victim, who provided details about the rape and a description of the perpetrator. It was not until January 2004, however—nearly two years after the rape occurred—that the medical examiner issued a report stating that the sample taken from the victim matched defendant's DNA. Further DNA samples taken from defendant confirmed that his DNA matched the DNA extracted from the victim.

Defendant was arrested and indicted for rape in the first degree and sodomy in the first degree (Penal Law § 130.35 [1]; § 130.50 [1]) and the case proceeded to a jury trial. The victim, along with her friend, testified at the trial, describing the January 27th visit to Times Square and the return trip home. The friend testified that the group did not meet defendant that night, either at the arcade or on the subway ride to Brooklyn.

The victim's medical records had been disclosed to defense counsel under the People's open file discovery agreement and were admitted into evidence by the People during their direct case. The records noted that there was no external or internal trauma on the victim's body, but a sexual assault forensic

examiner from the treating hospital explained that the absence of such physical trauma in rape cases is common. Included with the medical records admitted into evidence—but not in the copy previously made available to defense counsel—was a one-page record of consultation by a hospital psychiatrist who interviewed the victim as a matter of hospital protocol. Unaware of its existence, defense counsel did not cross-examine any of the People's witnesses regarding the information contained in the consultation note.

Defendant testified at trial that he met the victim in an arcade in Times Square, where he was socializing with two of his friends, and that she led him on a train ride to her neighborhood in Brooklyn. Upon reaching the victim's apartment building, defendant claimed that she led him up to the roof. According to defendant, the victim was sexually aggressive and they had consensual sexual intercourse. Afterwards, defendant testified that the victim voluntarily escorted him to the subway. According to defendant, she became enraged when he told her that he was not interested in seeing her again and she threatened him, saying he would come to regret it. He denied turning the victim's cell phone off, wiping it clean or threatening her.

A private investigator testified for defendant that the victim had previously corroborated defendant's version of events preceding the alleged rape. According to the investigator, he questioned the victim in her apartment for 5 to 10 minutes and she told him that she met defendant in an arcade in Manhattan, left with him voluntarily and did not mention that she was raped. The investigator admitted that he did not make any record of the interview.

During summation, defense counsel, while leafing through the medical records in evidence, discovered the undisclosed one-page consultation note that had never been turned over to him pursuant to the parties' open file discovery agreement. Defense counsel demanded a mistrial. The People responded that they did not turn over the document because they believed it to be privileged. At defense counsel's request, the court removed the document from the medical records, neither side mentioned it to the jury during closing arguments, and the jury never learned of the document. The court reserved decision on defendant's motion for a mistrial.

The jury found defendant guilty of first-degree rape and first-degree sodomy. Defendant filed a written motion to set aside the

verdict (*see* CPL 330.30 [1], [3]). Supreme Court denied the motion, opining that the contents of the document would not have changed the outcome of the trial as the document did not materially bear on defendant's guilt or innocence. The court also noted that defendant received the document during trial and had an opportunity to utilize it.

The Appellate Division affirmed, holding that there was no *Brady* violation because defendant was given a meaningful opportunity to use the document during the trial (48 AD3d 479 [2008]). A Judge of this Court granted defendant leave to appeal (10 NY3d 934 [2008]), and we now affirm, employing a different rationale.

## II

The Due Process Clauses of the Federal and State Constitutions both guarantee a criminal defendant the right to discover favorable evidence in the People's possession material to guilt or punishment (*see Brady*, 373 US at 87-88; *People v Bryce*, 88 NY2d 124, 128 [1996]). Impeachment evidence falls within the ambit of a prosecutor's *Brady* obligation (*see Giglio v United States*, 405 US 150, 154-155 [1972]). To establish a *Brady* violation, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material (*see Strickler v Greene*, 527 US 263, 281-282 [1999]).

In New York, where a defendant makes a specific request for a document, the materiality element is established provided there exists a "reasonable possibility" that it would have changed the result of the proceedings (*see People v Vilardi*, 76 NY2d 67, 77 [1990]). Absent a specific request by defendant for the document, materiality can only be demonstrated by a showing that there is a "reasonable probability" that it would have changed the outcome of the proceedings (*see Bryce*, 88 NY2d at 128; *People v Hunter*, 11 NY3d 1, 5 [2008]).

Assuming, here, but without deciding whether the claim should be evaluated under a "reasonable possibility" standard, we turn to the substance of the undisclosed document. In doing so, we agree with Supreme Court that disclosure of this one-page document would not have altered the outcome

of the case.* Significantly, the document notes that the victim was upset because she placed herself in danger when she walked home from the train by herself in the early morning hours preceding her attack. That information would have undoubtedly strengthened the People's case by corroborating the victim's testimony that she walked home alone when defendant accosted her at knifepoint.

Although the document notes that the victim had experienced suicidal thoughts, it is unclear whether these thoughts were the result of having been raped only hours earlier, or due to more general feelings of depression, stemming from a strained relationship with her mother. Further, the record of consultation does not note that the victim was suffering from any serious psychiatric conditions creating hallucinations or delusions; in fact it indicates that the victim had no previous psychiatric history. Thus, contrary to the dissent, this case differs from other cases where the nondisclosure of a witness's mental illness constituted reversible error (see e.g. People v Rensing, 14 NY2d 210, 212-214 [1964] [sole witness implicating defendant was mentally ill]; People v Dudley, 167 AD2d 317, 319-321 [1st Dept 1990] [the People's case rested on the sole eyewitness who had a long history of mental illness]).

Defendant argues that the statement in the document noting the victim's "cannabis abuse" would have changed the outcome of the case. The report explains that the victim only used marijuana twice during the past year, and nowhere does it state that she took any other substances that could have seriously impacted or impaired her perceptions of reality. Therefore, in the context of this case, the value of the undisclosed information as admissible impeachment evidence would have been, at best, minimal.

Moreover, defendant's version of events was contradicted in several key respects. The friend's testimony refuted defendant's version because she testified that the victim left Manhattan and boarded a train with her and her family without defendant ever being present. Further, the victim testified in specific detail regarding how defendant took steps to avoid apprehension, including turning her cell phone off and wiping it clean of

---

* Contrary to the dissent (see dissenting op at 266), we do not engage in a selective marshaling of the evidence. We evaluate the trial testimony as a whole in determining that the nondisclosure of the record of consultation did not meet the materiality standard required for a reversal.

fingerprints. It is also contrary to common sense to believe that the victim would have invented a rape and subjected herself to an invasive hospital examination in the hope of getting revenge for defendant's supposed refusal of her advances. She did not have a way of leading the police to defendant, or any reason to be confident he would ever be caught; he was not identified until the DNA match was found years later.

In reaching our conclusion that the undisclosed consultation note was immaterial and would not have changed the outcome of the trial, we do not condone the People's decision to withhold the document from defendant or their failure to, at a minimum, inform the trial judge about it and request an in camera inspection to determine its admissibility. Indeed, defense counsel should be able to assume that a medical record is complete in a case, such as this, of open file discovery. Nevertheless, given this document's extremely limited utility as impeachment evidence and the strength of the People's case, in conjunction with the implausibility of defendant's version of events, the nondisclosed document does not meet the materiality standard—the third prong required to establish a *Brady* violation (*see Strickler*, 527 US at 281-282)—and the nondisclosure thus does not require reversal.

Accordingly, the order of the Appellate Division should be affirmed.

JONES, J. (dissenting). The defendant by this appeal raises the question of whether his conviction was obtained in violation of *Brady v Maryland* (373 US 83 [1963]). The majority holds that no *Brady* violation occurred because the information contained in a nondisclosed medical record of a psychiatric consultation was not "material" and therefore did not constitute *Brady* material. I disagree and respectfully dissent.

I agree that in order to qualify as *Brady* material, a document must meet the three-pronged test outlined in *Strickler v Greene* (527 US 263 [1999]). *Strickler* holds that one of the tests in determining whether or not a document qualifies under *Brady* is that the document must be "material." A document is deemed to be material if there is "a reasonable possibility" that its disclosure would have affected the outcome of the trial (*People v Vilardi*, 76 NY2d 67, 78 [1990]). The record of psychiatric consultation at issue in this case contained information concerning the condition of the victim during her examination at Woodhull Hospital following the incident. The victim expressed

feelings of depression, suicide, family problems, mistreatment by her mother, withdrawal and substance abuse. There is no question that defense counsel would have been obliged to conduct a follow-up investigation of these conditions to determine the extent of the victim's psychological infirmities. Nondisclosure of psychiatric problems has been held to be a material violation of *Brady* and has resulted in reversal (*see People v Rensing*, 14 NY2d 210 [1964]; *People v Dudley*, 167 AD2d 317 [1990]). In determining whether the document which was deliberately excluded by the Assistant District Attorney was material, the court engages in a selective marshaling of the trial testimony and arrives at the conclusion that disclosure of this document would not have altered the outcome of the case and is therefore not material. I disagree.

The disputed allegations of this case while unusual are straightforward. The defendant concedes that he engaged in sexual intercourse with the victim on the roof of the building in which she resided. He testified that the encounter was consensual and that the victim was a willing and aggressive participant. The victim testified that she was forcibly assaulted at knifepoint. Her version is partially corroborated by a witness who was with her earlier in the evening and to whom the rape was reported nearly seven hours later. The defendant's account was partially corroborated by the testimony of a private investigator retained by the defense who said that the victim made a statement consistent with defendant's version of events. In my evaluation of the trial testimony as a whole, I adhere to my position that there are facts which support each side.

With the sharply divergent evidence on the question of consent, the issue of credibility was central to the jury's consideration of the case. It is within this context that the actions of the Assistant District Attorney in unilaterally removing the record of psychiatric consultation must be evaluated. Although the majority points out that the "defendant's version of events was contradicted in several key respects" and that "[i]t is . . . contrary to common sense to believe that the victim would have invented a rape" (majority op at 264, 265), there is other evidence which weighs in favor of the defendant, such as the victim walking with the defendant to the subway station after the assault and failing to report the rape until the afternoon. In light of the contradictory evidence in this case, it cannot be said that the removal of the record of psychiatric consultation from the hospital records, which were turned over to defendant

pursuant to open file discovery, did not affect the outcome of the trial. Indeed, the fact that the jury deliberated for almost two full days before returning a verdict suggests that serious consideration may have been given to both versions of events. Credibility was clearly at issue.

The majority determines that the impeachment value of this evidence would be limited, but this analysis fails to account for the probability that disclosure of the record of consultation would have likely resulted in a more intense investigation of the victim's psychological background and history. Such investigation was foreclosed when defendant was misled into thinking that he had a complete record pursuant to the open file discovery process. It is an unfortunate fact that the removal of this document by the People was done without notice to the court or defense counsel.

Open file discovery, admirably adopted by the District Attorney, is intended to streamline the discovery process and ensure a fair trial by eliminating the inappropriate exclusion of evidence to which the defendant is entitled. At the heart of this procedure is a good faith reliance on the fact that nothing has been removed, altered or redacted without court approval and notice to the defendant. The deliberate and unilateral removal of this document undermines the letter and spirit of open file discovery and must not be condoned.

Because I am convinced that a significant *Brady* violation occurred, I would reverse the order of the Appellate Division and remand for a new trial.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH and PIGOTT concur with Judge CIPARICK; Judge JONES dissents and votes to reverse in a separate opinion in which Judge READ concurs.

Order affirmed.