[991 NYS2d 297]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v GABRIEL HUBBARD, Defendant.

Supreme Court, Suffolk County, July 25, 2014

## APPEARANCES OF COUNSEL

*Legal Aid Society*, Riverhead (*Louis E. Mazzola* of counsel), for defendant.

*Thomas J. Spota, District Attorney*, Riverhead (*Michael J. Miller* of counsel), for plaintiff.

## OPINION OF THE COURT

MARTIN I. EFMAN, J.

By notice of motion dated May 6, 2014, affirmation of defense counsel and supporting affidavits, defendant moves for an order vacating the judgment of conviction entered herein pursuant to CPL 440.10 (1) (h) and (g). By June 5, 2014 affirmation in opposition and accompanying memorandum of law, the Suffolk County District Attorney's Office opposes the motion. After careful consideration, and for the reasons stated below, defendant's motion is granted. The judgment of conviction is reversed and the court orders a new trial.

### Findings of Fact

The *Hubbard* Case

On May 8, 2012, following a jury trial, defendant was found guilty of murder in the second degree under Suffolk County indictment No. 01617-2010 for the July 5, 2008 gang-related shooting death of Jaquan Jones in Wyandanch, Suffolk County, New York. On June 7, 2012, defendant, who was age 15 on the date of the shooting, was sentenced as a juvenile offender to an indeterminate period of incarceration of 15 years to life.

The People's case included evidence of defendant's motivation to commit the crime, evidence that defendant and others sought bullets shortly before the shooting and evidence that defendant left the jurisdiction and went to North Carolina immediately after the shooting. At trial, the key piece of evidence against Hubbard was his April 26, 2010 confession taken by Detective Ronald Tavares and witnessed by Detective Charles E. Leser in North Carolina. In addition to an incriminating written statement, the People presented evidence of a concurrently executed sketch and markings on two photographs. The statement and other written items were given in North Carolina by Hubbard, who was a 17-year-old high school student at the time.

The felony complaint against defendant was filed on the evening of April 26, 2010. Although approximately 21 months had elapsed since the date of the homicide, the charges were not filed until after defendant had signed the confession.

Defendant was indicted on June 17, 2010.

On August 30, 2010, defense counsel filed a comprehensive "Demand to Produce" (CPL 240.20). In addition to a general request for disclosure of evidence or information tending to prove favorable to defendant, this demand included specific requests for "any evidence which tends to impeach any prospective prosecution witness"; "any statement or other document, record or information in any form, which indicates that a prospective prosecution witness has given contradictory information or has engaged in lying, deceitful or otherwise mendacious activity"; "any information which indicates that a prospective prosecution witness has given information contradictory to or materially at variance with information received from any other sources" and "any information indicating that any potential prosecution witness has engaged in an erratic course of behavior or has in the past made false or misleading reports of criminal or otherwise improper conduct" (demand to produce at 3, para h, §§ ii, iv-vi).

On October 26, 2010, and on three subsequent dates, the People disclosed materials to the defense in response to the demand to produce. Certain evidence concerning Detective Tavares and Detective Leser, the two witnesses to defendant's statements, was not included in any of these responses.

On April 4, 2011, defendant filed an omnibus motion, which included an application for an order directing the People to disclose any items within their possession or control that were demanded in the August 30, 2010 demand to produce (CPL 240.40). By April 18, 2011 affirmation in opposition, the People represented that they had fully complied with CPL 240.20.

On May 2, 2011, the court issued an omnibus decision which, in pertinent part, reminded the People of their obligations pursuant to *Brady v Maryland* (373 US 83 [1963]).

On August 16, 17 and 19, 2011, the court conducted a combined pretrial hearing which included a motion to suppress statements attributed to defendant pursuant to *People v Huntley* (15 NY2d 72 [1965]). By decision and order of August 30, 2011, the court determined that the People had shown beyond a reasonable doubt that defendant's waiver of constitutional rights

was knowing, intelligent and voluntary and that defendant's statements were voluntarily made and thus admissible in evidence at trial. Detective Ronald Tavares was the only witness who testified at the hearing and the court found his testimony credible in all respects.

Jury selection in this matter commenced on April 16, 2012. Defendant's statement to police was a key issue at trial. During closing arguments to the jury, the People responded to defense counsel's attack on the credibility of Detective Tavares and the confession that he had obtained. The prosecution specifically argued the absence of prior misconduct:

> "I suggest that we should be thankful for such a hardworking, professional, dedicated detective. A 27 year career, did you hear one question posed to him about how he's ever been accused of wrongdoing, an IAB investigation, sued by a defendant for violating their right? If it existed, don't you think you would have heard it at this trial?" (Trial tr, May 4, 2012 at 44-45.)

It appears that jury deliberations pointedly centered on defendant's written confession. Of the 14 total notes sent by the jury, nine of them requested legal or evidentiary information prior to reaching a verdict. Of these nine notes, eight focused on the written statement attributed to defendant. The jury's questions concerned the law "specifically regarding conviction on confession by defendant," *Miranda* rights, review of the confession and related testimony.

Jury deliberations began on May 4, 2012. After three days of deliberation, a unanimous verdict was rendered on May 8, 2012. Following the verdict, defendant was remanded without bail and sentenced on June 7, 2012.

The *Moroughan* Case

While the *Hubbard* indictment was pending, a separate series of unrelated events unfolded in Suffolk County. On February 27, 2011, over a month before the filing of defendant Hubbard's omnibus motion and nearly six months before the *Huntley* hearing in *Hubbard*, a shooting occurred in the Town of Huntington, Suffolk County, involving two off duty police officers from neighboring Nassau County. Thomas Moroughan, a civilian, was shot and then charged with assault in the second degree (Penal Law § 120.05) and reckless endangerment in the second degree (Penal Law § 120.20). The case was prosecuted by the Suffolk County District Attorney's Office. The evidence against Moroughan included a confession taken by Detective Ronald Ta-

vares and witnessed by Detective Charles E. Leser, the same two detectives who took Hubbard's statement.

The events of February 27, 2011 gave rise to a lengthy Internal Affairs investigation, which was handled at different times by the Nassau County Police Department's Internal Affairs Bureau and Suffolk County Police Department Internal Affairs. On March 4, 2011, the case was assigned to two Suffolk County homicide prosecutors, one of whom was the same prosecutor assigned to the *Hubbard* case.

Internal Affairs documents relating to the Moroughan incident were inadvertently made public in a pending federal civil suit and are referred to in defendant Hubbard's submissions (motion to vacate judgment, exhibit C). They include investigation into allegations that the two officers involved in the shooting may have been intoxicated at the time of the incident and that there were differing versions of the events that transpired. It was also publically reported that the written statement attributed to Moroughan, which exonerated police and incriminated Moroughan, was contradicted by the Internal Affairs investigation and crime scene analysis (motion to vacate judgment, exhibit B).

On May 25, 2011, Thomas Moroughan filed a notice of claim against the Nassau and Suffolk County Police Departments. The notice of claim included an allegation that a false statement had been taken by police.

On June 6, 2011, the Suffolk County District Attorney's Office's oral application to dismiss the *Moroughan* case pursuant to CPL 170.30 (f) was granted in the Suffolk County District Court. In support of its motion, the prosecution cited a significant deficiency in the proof which would impact its ability to prove beyond a reasonable doubt the elements of the charges pending against the defendant. A specific representation was made that there was conflicting evidence surrounding the facts and circumstances of the case as well as evidence that the officers involved had been consuming alcoholic beverages prior to the shooting.

On July 28, 2011, Moroughan testified at a hearing conducted pursuant to General Municipal Law § 50-h. Under oath, he testified about the alleged misconduct of Detective Tavares and Detective Leser in obtaining what he claimed was a false confession. This hearing was conducted approximately one month before the *Huntley* hearing in *Hubbard*.

On February 3, 2012, Moroughan filed a civil lawsuit in United States District Court for the Eastern District of New

York. Detectives Tavares and Leser were among the named defendants. Plaintiff accused them of creating a false confession.

At no time during the pendency of the *Hubbard* case did the prosecution disclose information to the defense relating to the involvement of Detective Tavares and Detective Leser in the *Moroughan* case.

## Conclusions of Law

The issue before the court is whether the failure of the *Hubbard* prosecution to disclose information concerning the involvement of the two police witnesses in the Moroughan incident constitutes a *Brady* violation. Under the unique facts and circumstances of this case, the court concludes that it does.

Pursuant to *Brady v Maryland* (373 US 83, 87 [1963]), the prosecution's failure to turn over evidence favorable to an accused upon request violated due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* imposes upon the People a broad, but not unlimited, obligation to disclose exculpatory evidence (*Strickler v Greene*, 527 US 263, 281 [1999]; *People v Garrett*, 23 NY3d 878 [2014]). In order to prevail on a claimed *Brady* violation, "a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (*People v Garrett*, 23 NY3d at 885, citing *People v Fuentes*, 12 NY3d 259, 263 [2009], *Strickler v Greene*, 527 US at 281-282, *People v Hayes*, 17 NY3d 46, 50 [2011], and *People v LaValle*, 3 NY3d 88, 109-110 [2004]).

The threshold issue is whether the Moroughan statement taken by Detective Tavares falls within the *Brady* responsibilities of the People. Clearly, it does. The allegations were favorable to defendant and would have impeached a key witness at trial. Impeachment evidence constitutes *Brady* material because, when used effectively, it "may make the difference between conviction and acquittal" (*United States v Bagley*, 473 US 667, 676 [1985]). In this case, it was particularly critical because the evidence presented by the People consisted largely of the incriminating statements attributed to Hubbard. Defendant made a specific request for this material in his August 30, 2010 demand to produce when he requested "any information that a potential prosecution witness had previously made false or misleading reports . . . ." This request was renewed in defendant's April 4, 2011 omnibus motion.

The court finds that this impeachment information was within the prosecution's custody, possession or control (*People v Santorelli*, 95 NY2d 412 [2000]). Unlike *Garrett* and other cases which address issues concerning knowledge imputed to the prosecution in cases where the police fail to disclose the existence of *Brady* material, this case involves actual knowledge on the part of the People. The prosecutor, assigned on March 4, 2011 to the *Moroughan* case, was also assigned to the *Hubbard* case. Ten months prior to jury selection in *Hubbard*, the criminal case against Moroughan was dismissed on motion by the People.

In considering all of the unique facts and circumstances of this case, the court finds that prejudice arose because the suppressed evidence was material. Defendant was not charged or arrested on this case until 21 months had passed since the date of the crime and only after police had procured the written statements. Based on the questions posed by the jury, the statements attributed to defendant were a focal point of jury deliberation. These questions reflect a clear concern about *Miranda* rights and the law "specifically regarding conviction on confession by defendant" (court exhibits III, X). By arguing to the jury that no evidence had been presented that Detective Tavares had ever been sued by a defendant, at a time when the civil action had in fact been filed and the Internal Affairs investigation was ongoing, the People underscored the credibility of their main witness. The testimony of this officer was pivotal in effectuating defendant's arrest and conviction. In this particular case, such information would have materially influenced the jury. Without it, the jury was deprived of its right to fairly assess the credibility of an important witness, consider the contents of defendant's statements and the circumstances under which they were rendered and arrive at an independent conclusion.

In this particular case, the omitted evidence was material and there is a reasonable probability that, had it been disclosed, the outcome of this trial would have been different. Under *Brady v Maryland*, as applied here, the court is compelled to reverse the judgment of conviction.

Having reached the foregoing conclusion, the court need not address the remaining issues raised in defendant's motion. Ordered that defendant's judgment of conviction under indictment No. 01617-2010 is reversed and a new trial ordered.