■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EVERTON WAGSTAFFE and REGINALD CONNOR, Appellants. [992 NYS2d 340]—

Appeals by the defendants, by permission, from an order of the Supreme Court, Kings County (Parker, J.), dated October 28, 2011, which, after a hearing, denied their separate motions pursuant to CPL 440.10 to vacate judgments of the same court (Goldstein, J.) rendered February 16, 1993, and February 22,

1993 (one as to each of them), convicting them of kidnapping in the second degree, upon a jury verdict, and imposing sentences.

Ordered that the order is reversed, on the law, the defendants' separate motions pursuant to CPL 440.10 to vacate the judgments of conviction rendered against each of them are granted, the indictments are dismissed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent with CPL 160.50.

Just before 7:00 a.m. on January 1, 1992, the police found the body of a 16-year-old homicide victim on a street in a deserted industrial area in the East New York section of Brooklyn. The victim was only partially clothed, and had been stabbed repeatedly, strangled, and beaten. Subsequently, the police arrested the defendants, following their identification by Brunilda Capella, who was under the influence of drugs and alcohol at the time she witnessed the victim being forced into a vehicle. The defendants were both convicted by a jury of second degree kidnapping.

On direct appeal, this Court separately affirmed both judgments of conviction (see People v Wagstaff, 219 AD2d 690 [1995]; People v Connor, 219 AD2d 664 [1995]). Each defendant moved for leave to appeal to the Court of Appeals, and their respective motions were denied (see People v Wagstaff, 88 NY2d 996 [1996]; People v Connor, 88 NY2d 982 [1996]).

Subsequently, the defendants separately moved pursuant to CPL 440.10 to vacate their respective judgments of conviction. Among the various grounds raised, they contended that their convictions were obtained by fraud and misrepresentation on the part of the police (see CPL 440.10 [1] [b]). Specifically, they contended that certain documentary evidence establishes that two police detectives gave false testimony at the Wade hearing (see United States v Wade, 388 US 218 [1967]) and at trial, resulting in their convictions. The Supreme Court held a factfinding hearing with respect to certain issues raised in the defendants' CPL 440.10 motions, but not as to whether the convictions were obtained by fraud and misrepresentation. Following that hearing, the Supreme Court denied the defendants' motions.

On appeal, the defendants continue to advance their arguments pursuant to CPL 440.10 (1) (b) and, in addition, contend that the People violated their disclosure obligations pursuant to Brady v Maryland (373 US 83 [1963]) with respect to the documents upon which the defendants rely to make the claims of misrepresentation and fraud by the investigating detectives. They contend that, therefore, CPL 440.10 (1) (h) provides an

equally viable ground for vacating their judgments of conviction, which were "obtained in violation of a right . . .. under the constitution of this state or of the United States." As the People correctly note, this contention is unpreserved for appellate review. However, it is closely tied to their contention concerning the alleged falsified testimony, and we exercise our interest of justice jurisdiction to reach it (*see* CPL 470.05 [2]).

At the outset, the Supreme Court improvidently exercised its discretion in denying those branches of the defendants' motions which were pursuant to CPL 440.10 (1) (b) by invoking the permissive ground for denial set forth in CPL 440.10 (3) (a), and finding that the "defendants could have with due diligence placed on the record before sentencing facts to provide an adequate basis for appellate review, but unjustifiably failed to do so." There is no indication in the record that the subject documents were disclosed to the defense in time to be used at the *Wade* hearing; rather, the prosecutor provided documents to the defense on the record at the time of jury selection. Moreover, while it is undisputed that the subject documents were included within the disclosure made during jury selection, the record reveals that the prosecutor delivered the subject documents interspersed throughout a voluminous amount of other documentation, without specifically identifying the documents at issue at the time of the delivery. As a result, the defendants were not afforded an adequate opportunity to develop a factual record for appellate review on direct appeal, and the Supreme Court should have exercised its discretion and reached this issue on the merits (*see* CPL 440.30 [2]).

The People have an obligation to disclose exculpatory evidence, known as *Brady* material, in their possession which is favorable to the defendant and material to his or her guilt or innocence (*see Brady v Maryland*, 373 US 83, 87 [1963]; *People v Fuentes*, 12 NY3d 259, 263 [2009]; *People v Scott*, 88 NY2d 888, 890 [1996]). Such evidence is to be produced regardless of whether a defendant requests the material (*see Strickler v Greene*, 527 US 263, 280-281 [1999]; *People v Garrett*, 106 AD3d 929 [2013], *revd on other grounds* 23 NY3d 878 [2014]). The prosecutor's duty to exchange *Brady* material extends to the disclosure of evidence that can be used to impeach the credibility of a witness for the People whose testimony may be determinative of the defendant's guilt (*see Giglio v United States*, 405 US 150, 154-155 [1972]; *People v Baxley*, 84 NY2d 208, 213 [1994]). Such material is to be turned over to the defendant in time for him or her to use it in a meaningful fashion during cross-examination or as evidence during his or her own case (*see e.g. People v Cortijo*, 70 NY2d 868, 870 [1987]).

In order to establish a *Brady* violation, a defendant must prove: (1) the evidence at issue is favorable to him or her; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice ensued because the suppressed evidence was material (*see Strickler v Greene*, 527 US at 281-282; *People v Hayes*, 17 NY3d 46, 50 [2011]; *People v Fuentes*, 12 NY3d at 263; *People v LaValle*, 3 NY3d 88, 110 [2004]). As to the element of materiality, where there was only a general request by the defendant at the time of trial for exculpatory material, evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different (*see People v Fuentes*, 12 NY3d at 263; *People v Bryce*, 88 NY2d 124, 128 [1996]; *People v Vilardi*, 76 NY2d 67, 73-77 [1990]). Here, the manner in which the prosecution turned over the documents, during the course of jury selection, deprived the defendants of a meaningful opportunity to employ that evidence during their cross-examination of the prosecution's witnesses (*compare People v Sanchez*, 21 NY3d 216, 225 [2013]; *People v Alonso*, 91 AD3d 663, 665 [2012]).

The documents at issue—a Request for Record Check, dated January 1, 1992, concerning the defendant Reginald Connor, and New York State Police Information Network requests for records pertaining to both defendants—reveal that the defendants were being investigated by the New York City Police Department prior to the detectives' interview of Capella, a fact that was contrary to the testimony of one of the investigating detectives that the interview with Capella on January 2, 1992, led the police to the defendants. These documents clearly fell within the ambit of the prosecutor's *Brady* obligations because they constituted impeachment evidence (*see People v Fuentes*, 12 NY3d at 263; *see also Giglio v United States*, 405 US at 154-155). The failure to properly disclose such documents curtailed the defendants' ability to investigate additional avenues of exculpatory or impeaching evidence (*see United States v Gil*, 297 F3d 93, 104 [2d Cir 2002]).

Further, since the record does not reveal that the defendants made a specific request for the subject documents, materiality can only be demonstrated by showing that there is a reasonable probability that those documents, had they been properly identified and exchanged in such a manner so that they could be used in a meaningful fashion during the cross-examination of Capella and the detectives, would have changed the outcome of the proceedings (*see People v Fuentes*, 12 NY3d at 263; *People v Bryce*, 88 NY2d at 128). There was a reasonable probability

that, had the prosecution identified these documents when delivering them to the defendants, the employment of these documents would have changed the outcome of the defendants' trial, since the prosecution's case rested almost exclusively on the testimony of Capella (*see People v Hunter*, 11 NY3d 1, 6 [2008]; *People v Garrett*, 106 AD3d at 929). The documents call into question whether Capella provided the detectives with the identities of the defendants or if the detectives, without an evidentiary basis, had identified Connor and Wagstaffe prior to Capella's identification of them, thus bearing negatively upon the credibility of Capella and the investigating detectives. Given the lack of any other evidence tying the defendants to the crime, the credibility of Capella and the investigating detectives was of primary importance in this case, so that the burying of the subject documents by the prosecution during the exchange of discovery was material (*see People v Hunter*, 11 NY3d at 6; *see also Giglio v United States*, 405 US at 154-155).

In light of our determination, the defendants' remaining contentions have been rendered academic.

Under the circumstances of this case, including the passage of time and the death of the main witness, Capella, we vacate the judgments of conviction and dismiss the indictments (*see* CPL 440.10 [4]). Skelos, J.P., Dillon, Dickerson and Austin, JJ., concur.