*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: May 12, 2016 106294
_____

THE PEOPLE OF THE STATE OF
   NEW YORK,
               Respondent,

     v                        MEMORANDUM AND ORDER

MICHAEL HAGAMAN,
               Appellant.
_____

Calendar Date: March 25, 2016

Before: McCarthy, J.P., Garry, Lynch, Devine and Clark, JJ.

_____

Lisa A. Burgess, Indian Lake, for appellant.

Kathleen B. Hogan, District Attorney, Lake George (Emilee B. Davenport of counsel), for respondent.

_____

Devine, J.

Appeal from a judgment of the County Court of Warren County (Hall Jr., J.), rendered June 25, 2013, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child (10 counts) and conspiracy in the second degree.

Defendant (born in 1984) and Anthony Merrill were charged in an indictment with various offenses stemming from their alleged repeated sexual abuse of a victim who was less than two years of age at the time. The charges against Merrill were resolved in a plea agreement that required him to cooperate in the prosecution of defendant. Following a jury trial at which Merrill testified against him, defendant was convicted of 10 counts of predatory sexual assault against a child and one count of conspiracy in the second degree. County Court denied

defendant's motion to set aside the verdict and sentenced him to an aggregate prison term of 100 years to life. Defendant appeals, and we now affirm.

Defendant first asserts that the verdict was against the weight of the evidence. In that regard, defendant was on parole in 2012 and was obliged to speak to his parole officer and obtain the officer's approval before contacting acquaintances.[1] He obtained permission from the officer to go to Merrill's residence after representing that no children would be present. Defendant altered his story over time, however, and eventually admitted to the officer that he had been in contact with the victim five times at Merrill's residence. The officer was concerned enough by defendant's lies, as well as his evasive and nervous demeanor, to obtain a parole warrant and take him into custody. The officer further contacted State Police Investigator William Shea to look into the situation. Shea interviewed Merrill and defendant separately, and both gave detailed and largely consistent statements indicating that the victim had been subjected to varied forms of sexual abuse on four separate occasions when defendant visited Merrill's residence. Merrill testified to the nature of that abuse at trial, stating that defendant had performed oral sex on the victim, forced his penis into the victim's mouth, and anally raped the victim in differing combinations over the course of five incidents. The mother of the victim testified that she had left defendant and Merrill alone with the victim on several occasions, and that the victim was upset and crying when she returned. Defendant then took steps to cover up the abuse after his parole officer's suspicions

---

[1] Defendant's status as a parolee led to the discovery of his crimes and, as such, evidence regarding that status was "indisputably necessary to complete the narrative and inextricably intertwined with the facts of the charged offense so as to permit the jury to be informed of" it (People v Chestnut, 254 AD2d 525, 526 [1998], lv denied 93 NY2d 871 [1999] [internal citations omitted]; accord People v Walker, 80 AD3d 793, 795 [2011]). County Court gave appropriate limiting instructions to the jury that ameliorated any prejudice potentially caused by that evidence (see People v Walker, 80 AD3d at 795).

had been aroused, seeking out advice on "beating" a polygraph test and advising Merrill that he "took care of" a digital camera that was used to record the incidents of abuse. The proof of defendant's guilt was accordingly compelling and, contrary to his contentions, this varied proof satisfied the corroboration requirements of CPL 60.22 (see People v Burgin, 40 NY2d 953, 954 [1976]) and CPL 60.50 (see People v Flemming, 101 AD3d 1483, 1487 [2012], lv denied 21 NY3d 942 [2013]).

A different verdict arguably would have been reasonable. There was no physical evidence to verify that the abuse had occurred, although two physicians testified that such was not unusual due to the time that had passed before the victim was first examined. There was also some question as to whether four or five incidents of abuse had occurred, and the counts submitted to the jury only dealt with four incidents. Aside from those inconsistencies, as well as other variations in the accounts given by Merrill, defendant testified that the statements he made to Shea were untrue and that he had only made them because he was "agitated" by the interrogation and "wanted to [wrap it up] to get ready for dinner." Nevertheless, after "weigh[ing] conflicting testimony, review[ing] any rational inferences that may be drawn from the evidence and evaluat[ing] the strength of such conclusions," and according due deference to the jury's assessment of credibility, we find that "the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348 [2007]; see People v Fournier, 137 AD3d 1318, 1320 [2016]).

Defendant next argues that the verdict should have been set aside due to the People's failure to disclose evidence used to impeach the credibility of one of his trial witnesses. "The Due Process Clauses of the Federal and State Constitutions both guarantee a criminal defendant the right to discover favorable evidence in the People's possession material to guilt or punishment," and it follows that the People are obliged to turn over impeachment evidence that favors the defense in some way (People v Fuentes, 12 NY3d 259, 263 [2009] [citations omitted]; see Giglio v United States, 405 US 150, 154-155 [1972]; Brady v Maryland, 373 US 83, 87 [1963]). As noted above, the abuse was allegedly recorded with a digital camera that defendant "took

care of" afterwards.  Defendant called that evidence into question via the testimony of his mother, who stated that a digital camera owned by him was in her secure storage unit and that defendant had not handled the camera on the one occasion that they visited the unit around the time of the abuse.  The People, in turn, impeached the mother's credibility by cross-examining her regarding her prior statement to Shea that defendant <u>had</u> handled the camera while they were at the unit.[2] There may well be circumstances where impeachment evidence would remain material and exculpatory — and thereby warrant disclosure — even if the People attempted "to avoid [its] disclosure . . . by not calling the relevant witness to testify" themselves (<u>United States v Jackson</u>, 345 F3d 59, 71 [2d Cir 2003], <u>certs denied</u> 540 US 1157 [2004], 541 US 956 [2004]; <u>compare</u> <u>United States v Williams-Davis</u>, 90 F3d 490, 513 [DC Cir 1996], <u>certs denied</u> 519 US 1128, 1129 [1997], <u>with</u> <u>United States v Johnson</u>, 581 F3d 320, 331 [6th Cir 2009], <u>cert denied</u> 560 US 966 [2010]). Inasmuch as the prior statement of defendant's mother was in no way favorable to his defense, those circumstances are not present here.  Therefore, County Court properly determined that the People did not run afoul of their obligations under <u>Brady</u> and <u>Giglio</u> in failing to disclose the prior statement (<u>see</u> <u>People v Fuentes</u>, 12 NY3d at 263; <u>People v Sheppard</u>, 107 AD3d 1237, 1241 [2013], <u>lv denied</u> 22 NY3d 1203 [2014]).

Defendant also raises issues regarding the severity of his sentence by asserting that it was "grossly disproportionate" to that received by Merrill, but "[t]he fact that defendant's sentence was greater than that of his codefendant does not substantiate his claim that he was improperly punished for going to trial" (<u>People v Elwood</u>, 80 AD3d 988, 990 [2011], <u>lv denied</u> 16 NY3d 858 [2011]; <u>see</u> <u>People v Roberts</u>, 301 AD2d 756, 757 [2003]). County Court explained the discrepancy at defendant's sentencing, contrasting the uneventful criminal history of Merrill with

_____

[2]  The People did not turn over the mother's prior statement before trial, but the effect of that failure is far from clear, as they advised defense counsel both that the statement existed and that it contradicted her more recent claim that defendant had not handled the camera at the storage unit.

defendant's repeated commission of sex offenses involving young children.  Indeed, after taking into account defendant's prior criminal history, the heinous acts committed by him here and the evident danger he poses to children, we are unpersuaded that the aggregate sentence constituted an abuse of discretion or that extraordinary circumstances warrant its modification in the interest of justice (see People v Hughes, 114 AD3d 1021, 1025 [2014], lv denied 23 NY3d 1038 [2014]; People v Alford, 65 AD3d 1392, 1395 [2009], mod on other grounds 14 NY3d 846 [2010]).

Defendant's remaining arguments, to the extent that they are properly preserved for our review, have been considered and found to be lacking in merit.

McCarthy, J.P., Garry, Lynch and Clark, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court