People v Yedinak (2018 NY Slip Op 00194)





People v Yedinak


2018 NY Slip Op 00194


Decided on January 11, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 11, 2018

107561

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MICHAEL J. YEDINAK, Appellant.

Calendar Date: November 13, 2017

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and

 Pritzker, JJ.

George J. Hoffman Jr., Albany, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Susan Rider-Ulacco of counsel), for respondent.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Chemung County (Rich Jr., J.), rendered April 3, 2015, upon a verdict convicting defendant of the crimes of promoting a sexual performance by a child (seven counts) and possessing a sexual performance by a child (12 counts).
Defendant was charged in a 20-count indictment with seven counts of promoting a sexual performance by a child and 13 counts of possessing a sexual performance by a child, stemming from allegations that he downloaded files on the Internet containing videos and images of child pornography, allowed others to download those files and possessed said files. After a jury
trial, defendant was convicted of all counts [FN1] and sentenced to concurrent prison terms of 1 to 3 years for each conviction. This appeal ensued.
Defendant's convictions were supported by legally sufficient evidence. To find that a [*2]jury verdict is supported by legally sufficient evidence, we must determine "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury . . . and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal citation omitted]; see People v Graham, 138 AD3d 1242, 1242 [2016], lv denied 28 NY3d 930 [2016]). First, as to the convictions of possessing a sexual performance by a child, a person is guilty of this crime when, "knowing the character and content thereof, he [or she] knowingly has in his [or her] possession or control, or knowingly accesses with intent to view, any performance which includes sexual conduct by a child less than sixteen years of age" (Penal Law § 263.16). While this crime requires proof that the defendant knew of the character and content of the performance, it also specifically requires that the defendant knowingly had the sexual performance by a child in his or her possession or control (see Penal Law § 263.16; CJI2d[NY] Penal Law § 263.16). To knowingly possess, "some affirmative act is required (printing, saving, downloading, etc.) to show that [the] defendant in fact exercised dominion and control over the images" (People v Kent, 19 NY3d 290, 303 [2012]).
At trial, Nikki Tolias, a special agent with the Department of Homeland Security (hereinafter DHS), testified that she used DHS's computer network to log into ARES, a file sharing program, and downloaded several files from the same IP address that were shared on ARES and had been previously marked by law enforcement as possibly containing child pornography. Tolias testified that she then sent an administrative summons to the Internet provider for the IP address, who provided information that the IP address was assigned to defendant at his home. An employee from the Internet service provider testified regarding the documents that were created in response to the summons sent by Tolias. William Aiello, another special agent with DHS who investigates crimes involving child exploitation, testified that child pornography is not like other types of pornography in that it is not as readily available online, and those searching for it or looking to share it often use specific terms to indicate what it is, the most common of which are "PTHC," an acronym for "preteen hardcore," and "little lelita" [sic]. Aiello also testified regarding the execution of a search warrant at defendant's home at which time defendant admitted to using the term "young lolita" to search for pornography and viewing content with the label "PTHC," although he claimed to be unsure what it meant. Defendant also stated at that time that child pornography might be found on his computer, and, if it was, that was because he had not had a chance to delete it and that it would only be found in his ARES folder, later adding that it may also be found in his recycle bin. Ryan Glor, another DHS agent who performed the search of defendant's computers, testified regarding the subject videos and images that were found on two hard drives from a computer tower seized from defendant's residence and that the files downloaded by law enforcement from defendant's IP address contained explicit descriptions of the content therein. Also, a certified nurse midwife testified as to the ages of the females in the subject photos and images. All of the subject videos and images were viewed by the jury.
As this evidence established that defendant intentionally used two search terms that are commonly associated with files that contain child pornography, that defendant admitted there may be child pornography found in his ARES folder and that the file names of the files downloaded by law enforcement from defendant's IP address contained explicit descriptions of the content therein, the evidence is legally sufficient to support the element of knowledge regarding the content and character of the files for which defendant was convicted of possessing (see People v Petke, 125 AD3d 1103, 1104 [2015], lv granted 22 NY3d 1075 [2015]). Further, it was also established, by legally sufficient evidence, that defendant knowingly possessed the subject images and videos as he exercised dominion and control by downloading the images and videos that were found on his computer (see People v Kent, 19 NY3d at 303).
As to the legal sufficiency of the convictions for promoting a sexual performance by a child, a person is guilty of this crime when, "knowing the character and content thereof, he [or she] produces, directs or promotes any performance which includes sexual conduct by a child less than seventeen years of age" (Penal Law § 263.15). "Promote" is statutorily defined to mean "to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer or agree to do the same" (Penal Law § 263.00 [5]). As detailed in our legal sufficiency analysis for the convictions of possession of a sexual performance by a child, defendant's knowledge of the character and content of the images was established by legally sufficient evidence. Also, as the People proffered evidence that established that Tolias, while on the ARES program, downloaded the subject images and videos from defendant's IP address, defendant knowingly logged into the ARES program, used ARES extensively to download pornography and knew how ARES worked generally and that ARES is a peer-to-peer file sharing program, the evidence is legally sufficient to support the promoting element for the convictions of promoting a sexual performance by a child (see Penal Law § 263.15; People v Petke, 125 AD3d at 1105).
Contrary to defendant's contention, the verdict was not against the weight of the evidence. "A weight of the evidence review requires this Court to first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Perry, 154 AD3d 1168, 1169 [2017] [internal quotation marks, ellipsis, brackets and citations omitted]). Defendant testified that, while his computer contained thousands of images containing adult pornography, only 20 images deemed to be child pornography were discovered on his hard drive, which were the result of bulk downloads. Defendant also testified that he believed that he had his ARES software set on a "do not share" setting and that there were other individuals who may have had access to his computer. Based upon this testimony, a different verdict would not have been unreasonable, as the jury could have found defendant's testimony credible and determined that he did not possess the requisite knowledge to sustain these convictions (see People v Bleakley, 69 NY2d at 495; People v Perry, 154 AD3d at 1171; People v Taft, 145 AD3d 1090, 1091-1092 [2016], lv denied 29 NY3d 953 [2017]).
While defendant contends that his testimony established that he lacked the requisite knowledge needed to sustain his convictions, the testimony of the DHS investigators established the contrary. Given defendant's testimony that child pornography sometimes downloaded as a result of his bulk searches for teen pornography, it is not unreasonable to infer that defendant had knowledge of the character and content of these images and videos and that he knowingly possessed said images and videos. Defendant further testified that he would leave ARES running to download large quantities of pornography and if he saw something that disturbed him, he always tried to delete it. Also, despite testifying that he thought his ARES program was not set up to share files that he had downloaded, Aiello's testimony established that the default setting of the ARES software is to allow for file sharing and that ARES users who do not share their files are typically not allowed by other users to download their files. As defendant's testimony established that he knew how to use ARES and that he used it extensively to find and download pornography, it is not unreasonable to infer that defendant knew that he was "circulating" and "disseminating" — hence "promoting" — the files that he had downloaded (Penal Law §§ 263.00 [5]; 263.15; see generally People v Taft, 145 AD3d at 1091-1092). "[A]fter viewing the evidence in a neutral light and giving deference to the jury's credibility determinations," we find that the verdict was not against the weight of the evidence (People v Stocum, 143 AD3d 1160, 1163 [2016]).
Defendant also contends that the People failed in their Brady obligation to turn over metadata of the subject files, which he further contends would have allowed him to prove that he was not physically present at his computer on the dates when the files were downloaded. County Court reasoned that it did not see anything exculpatory about the metadata, and we agree. "To establish a Brady violation, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Fuentes, 12 NY3d 259, 263 [2009] [citation omitted]). "Absent a specific request by [the] defendant for the [piece of evidence], materiality can only be demonstrated by a showing that there is a reasonable probability that it would have changed the outcome of the proceeding[]" (id. [internal quotation marks and citations omitted]).
Even if there had been indisputable evidence to suggest that defendant was not at home when some of the files were downloaded, this would not be exculpatory given that the testimony at trial established that he ran bulk searches continuously based on the terms that he had previously actively searched for. Therefore, there was no Brady violation because there is nothing in the record that tends to prove that the metadata in question was exculpatory or that the People suppressed such evidence. Nor is there evidence to suggest that the result of the trial would have been any different if such metadata had been provided by the People (see People v Garrett, 23 NY3d 878, 891 [2014]; People v Fuentes, 12 NY3d at 263).
McCarthy, J.P., Egan Jr., Lynch and Devine, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: County Court dismissed one count of possessing a sexual performance by a child (count 19), finding that there was no sexual conduct exhibited as it related to the specific file at issue.