■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH J. SANTIAGO, Appellant. [68 NYS3d 265]—

Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered September 24, 2013. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and criminal possession of a weapon in the second degree (two counts).

It is hereby ordered that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]), and two counts of criminal possession of a weapon in the second degree (§ 265.03 [1] [b]; [3]), arising from allegations that he shot a man on a street in Rochester. Defendant contends that Supreme Court erred in permitting a witness to describe the perpetrator at trial, because that witness had previously viewed a photo array and identified defendant as the perpetrator to the police, and the People failed to provide a CPL 710.30 notice of the procedure.

We agree with defendant that, under the circumstances presented, the court erred in permitting the witness to describe the perpetrator and state that he resembled a particular popular musician, thereby implicitly identifying defendant as the perpetrator. The People admittedly did not provide the notice required by CPL 710.30 former (1) (b), and they failed to establish that the witness provided a description of the perpetrator before the identification procedure was conducted (*cf. People v Myrick*, 66 NY2d 903, 904 [1985]; *People v Sand-*

*ers*, 66 NY2d 906, 908 [1985]; *People v Jones*, 163 AD2d 911, 912 [4th Dept 1990], *lv denied* 76 NY2d 941 [1990]). Furthermore, although it appears that the witness had some familiarity with defendant, the court failed to hold a hearing at which the People could establish that "the witness is so familiar with the defendant that there is 'little or no risk' that police suggestion could lead to a misidentification" (*People v Rodriguez*, 79 NY2d 445, 450 [1992]).

Nevertheless, we conclude that, because "the proof of defendant's guilt is overwhelming, and there is no significant probability that the error might have contributed to defendant's conviction[,] . . . the error is harmless beyond a reasonable doubt" (*People v Peterkin*, 245 AD2d 1050, 1051 [4th Dept 1997], *lv denied* 91 NY2d 1011 [1998]; *see People v Thomas*, 58 AD3d 645, 645 [2d Dept 2009], *lv denied* 12 NY3d 921 [2009]; *People v Murphy*, 28 AD3d 1096, 1096 [4th Dept 2006], *lv denied* 7 NY3d 760 [2006]; *see generally People v Johnson*, 57 NY2d 969, 970 [1982]). Several other witnesses provided nearly identical descriptions of the perpetrator and his clothing, and defendant was apprehended a short distance away, very close to the murder weapon, and inside a locked yard into which the witnesses said the perpetrator had fled. Furthermore, he was wearing pants that matched the description that the witnesses gave of the perpetrator's pants, and he was holding a hat and had a T-shirt at his feet, both of which matched the witnesses' description of those parts of the perpetrator's clothing. Finally, immediately after being shot, the victim told a friend that defendant had shot him. Thus, "[e]ven in the absence of [the witness's implicit] identification testimony, the evidence at trial overwhelmingly established that defendant was the [perpetrator]" (*People v Pacquette*, 25 NY3d 575, 580 [2015]).

We reject defendant's further contention that the People committed a *Brady* violation by refusing to disclose the name of a confidential informant. It is well settled that a confidential informant's identity must be disclosed where his or her role in the matter was significant, such as where he or she was an eyewitness or participant in the crime, or was " 'an active participant in setting the stage' " (*People v Goggins*, 34 NY2d 163, 170 [1974]). "When however [the informant] has played a marginal part by, for instance, merely furnishing a tip or some information to the police, the privilege should prevail absent an extremely strong showing of relevance" (*id.*; *see People v Wade*, 38 AD3d 1315, 1315 [4th Dept 2007], *lv denied* 8 NY3d 992 [2007]).

Defendant failed to make such a showing here, and we

therefore reject his contention that reversal is required because of the court's refusal to require the People to disclose the informant's identity. The record establishes that the People provided the defense with a police report indicating that the informant, who was not present at the crime scene, had heard from an unknown source that a woman had removed something from the scene prior to the arrival of police officers. The report also indicated that the informant had heard that the victim had a weapon and fired back at defendant after defendant shot the victim. Thus, inasmuch as the confidential informant's hearsay information "made it appear as if the victim acted in self-defense and not the other way around" (*People v Fisher*, 28 NY3d 717, 722 [2017]), "there is [no] reasonable probability that[,] had it been disclosed to the defense, the result would have been different—i.e., a probability sufficient to undermine [this Court's] confidence in the outcome of the trial" (*People v Bryce*, 88 NY2d 124, 128 [1996]; *see People v Hunter*, 11 NY3d 1, 5 [2008]).

Contrary to defendant's further contention, the court did not abuse its discretion in admitting, as an excited utterance, a statement made by the victim to a friend in the immediate aftermath of the shooting. The victim told a friend, before police officers and emergency medical personnel arrived, that defendant shot him. It is well settled that, "under certain circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control . . . [An excited] utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection" (*People v Johnson*, 1 NY3d 302, 306 [2003] [internal quotation marks omitted]). In determining whether a statement is an excited utterance, "the decisive factor is whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection" (*People v Edwards*, 47 NY2d 493, 497 [1979]). Furthermore, that determination is "entrusted in the first instance to the trial court" (*id.*), and it is well settled that "[t]rial courts are accorded wide discretion in making evidentiary rulings and, absent an abuse of discretion, those rulings should not be disturbed on appeal" (*People v Carroll*, 95 NY2d 375, 385 [2000]). Here, we find no abuse of discretion in the court's determination that the victim's statement was an excited utterance (*see People v Brown*, 70 NY2d 513, 520 [1987]; *People v Medina*, 53 AD3d 1046, 1047 [4th Dept 2008], *lv denied* 11 NY3d 856 [2008]).

Finally, the court properly redacted from the victim's medical

records his statement that he did not know who shot him. Defendant contended that the statement was admissible under the business records exception to the hearsay rule (*see* CPLR 4518 [a]). "In order for a statement contained in a hospital record to be admissible under [that] exception, it must be germane to the medical diagnosis or treatment of the patient" (*People v Bailey*, 252 AD2d 815, 815-816 [3d Dept 1998], *lv denied* 92 NY2d 922 [1998]; *see People v Emanuel*, 89 AD3d 1481, 1482 [4th Dept 2011], *lv denied* 18 NY3d 882 [2012]), and defendant failed to establish that the statement in question had any relevance to the victim's diagnosis or treatment. Present—Whalen, P.J., Smith, Lindley, NeMoyer and Curran, JJ.